## DANIEL F. EMERY vs. FRANK O. L. HOBSON.

*Check. Action for money paid—when it lies. Demand. Indorser.*

Daniel F. Emery made a loan of $6000 to Joseph Hobson, receiving therefor the latter's check, which, at Emery's request, was made payable to the order of the defendant. Subsequently to obtaining the money, Joseph Hobson told his son Frank, (the defendant) what had been done, and requested Frank to go to Emery's office and indorse the check, which he did. After Frank had made the indorsement, the plaintiff asked him to put over it, the words "waiving demand and notice," and he did so. The check was retained by Emery more than a year before presenting it to the bank upon which it was drawn, during which time the maker withdrew his funds from the bank and became insolvent. *Held*, that, upon this state of facts, the payee of the check could maintain an action for money paid against the indorser, without showing any notice to him, or to the maker, that the check had been presented to the bank and payment refused, and without any demand upon either before bringing suit. The loan was a sufficient consideration for the signatures of both the maker and indorser of the check.

To support a count for money paid, it is not necessary that the defendant be relieved from any liability by the payment.

ON FACTS AGREED.

ASSUMPSIT. The writ, dated March 21, 1872, contained only this count: "in a plea of the case, for that the said defendant, at said Portland, on the day of the purchase of this writ, being indebted to the plaintiff in the sum of six thousand dollars, for so much money before that time paid and expended by the plaintiff to the use of the defendant, and at the defendant's request, and interest thereon, from June 11, 1870, in consideration thereof, then and there promised the plaintiff to pay him said sum on demand." Below the count was this specification :

"Mem. The claim on which this suit is based, is a check of Joseph Hobson, dated June 11, 1870, for $6000, to order of defendant, and by him indorsed to plaintiff, on First National Bank of Portland, indorsed waiving demand and notice, payment of which has been refused. W. L. PUTNAM, plaintiff's attorney."

To support his declaration, the plaintiff offered the check named in his specification. It was given under these circumstances : The maker, Joseph Hobson, desiring to obtain a loan from Mr. Emery, went to that gentleman's office for that purpose, on the eleventh day of June, 1870. Emery agreed to lend the money, but required to have Joseph Hobson's check for the amount made payable to the defendant's order, and indorsed by him ; accordingly it was so written, and signed by Joseph Hobson, as evidence of the loan, in Mr. Emery's office; and in exchange for it, at the same time and place, and upon Joseph Hobson's agreement that Frank should indorse as required, the check of Mr. Emery, payable to Joseph Hobson, was delivered to the latter, who carried it immediately to the First National Bank of Portland, where it was deposited, and credited to Joseph Hobson's account. Mr. Joseph Hobson then went to his own office, where he saw his son, the defendant, and told him he had obtained this loan of Mr. Emery, and given this check payable to Frank's order, agreeing with Emery that Frank should indorse it, and requested that he should go to Mr. Emery's office and do so.

This was the first knowledge Frank O. L. Hobson had of the matter, or of the check in suit. He acceded, however, to his father's request, went to Mr. Emery's office, and there indorsed the check. Immediately after Frank made his indorsement, Emery asked him to put over his name the words "waiving demand and notice;" this he also did, which was all that was ever said by any party to the paper about the nature of the indorsement.

Frank O. L. Hobson had no pecuniary interest in the check, but indorsed it solely for his father's accommodation and upon his request, as aforesaid, as the plaintiff well knew.

The check was never presented to the bank upon which it was drawn till July 14, 1871, when its payment was there demanded by the plaintiff's attorney and payment refused. In the mean time Joseph Hobson had failed, and been obliged to compromise with his creditors ; the plaintiff and some others refusing to enter into such compromise, and still holding their claims against him.

The defendant objected to the admission of the check in evidence; but it was agreed that if it were admissible to support the plaintiff's declaration, and the action could be maintained upon the facts above stated, and the inferences a jury might properly deduce therefrom, the defendant is to be defaulted; otherwise, judgment was to be entered in his favor and for his costs.

*William L. Putnam*, for the plaintiff.

I. Joseph Hobson obtained money for this check upon consideration that the defendant was to indorse it; and, for this reason, it was made payable to the order of the defendant, who was fully informed that it was part of the consideration that he should indorse it. He assented and did indorse it. It might have been shown that if he had not done so, the plaintiff would have been entitled to return the check to Joseph Hobson, and demand the money paid for it; and that, probably relying upon the defendant's assent to the arrangement, he did not do this. So, the defendant is estopped.

This, however, is not necessary; as in law, this was all one transaction, and is of the same effect as though all parties were actually present, and the indorsement completed simultaneously with the rest of the transaction.

II. The delay in demand of payment was expressly waived by defendant; and was clearly the desire of all concerned. While parol evidence may not be admissible to turn this check into a note, yet the fact that it was regarded as a loan by all the parties, is admissible to shut the mouth of a surety on the question of laches, even had there not been an express waiver.

III. The form of action is proper. The defendant, being an accommodation indorser, the check is evidence of money paid at the joint request of the maker and of the indorser. Independently of this, while the early practice in relation to the money counts was to regard the letter of the pleadings, lately the money counts are used indiscriminately in suits upon negotiable paper. Chitty on Bills, (eleventh Am. Ed.,) *579—*582; *Wild v. Fisher*, 4 Pick., 421; *Cole v. Cushing*, 8 Pick., 48.

*Edwin B. Smith*, for the defendant.

Upon the facts stated, two questions present themselves :

First. Is the evidence offered by the plaintiff admissible under this form of declaration ?

Second. If admitted, is the defendant liable under the circumstances of this case, as reported ?

## I.

I. If the check be not admissible, ordinarily, to support this count, the specification cannot make it so, any more than if a judgment, or claim for unliquidated damages, were specified.

"Although a specification, when it describes a cause of action consistent with the declaration, and one that can properly be proved under it, becomes and is treated as part of the declaration, yet a specification cannot enlarge, alter, or amend a declaration." *Pickering v. DeRochemont*, 45 N. H., 67.

It limits the proof to the cause of action specified, Id., *Parker v. Emery*, 28 Maine, 492 ; *Gooding v. Morgan*, 37 Maine, 423 ; *Butler v. Millett*, 47 Maine, 492 ; *Lapham v. Briggs*, 1 Wms. (Vt.) 26 ; *McQuestin v. Young*, 19 N. H., 307 ; *Man. & Law. R. R. v. Fisk*, 33 N. H., 297 ; *Starkweather v. Kittle*, 17 Wend., 20 ; *Bowman v. Earle*, 3 Duer., (N. Y.) 691.

But while it indicates the particular claim to be proved, it does not enlarge the class to which such claim must belong.

II. To recover, the plaintiff must establish his cause *secundem allegata et probata*. 1 Greenl. on Ev., § 78. *Smith v. Wheeler*, 29 N. H., 334; *Colburn v. Pomeroy*, 44 N. H., 19 ; *Matthewson v. Eureka Works*, Id., 291; *Child v. Eureka Works*, Id., 358 ; *Young v. Woodward*, Id., 250.

As said in *Smith v. Wheeler*, "the consideration of the contract must be truly stated and proved as laid." 29 N. H., 334. Same language in 44 N. H., 19.

The count here is "for money paid," &c. ; what does this legally import ? The essential elements are : (1) a payment, (2) of money, (3) by the plaintiff, (4) for (or at request of) the defendant.

I. It must be *money* that is paid ; otherwise this count will not

lie. 2 Bouv. Law Dict., 185, citing *Morrison v. Berkey*, 7 S. & R., 246; *Slaymaker v. Gundacker*, 10 S. & R., 75; *Doubler v. Fisher*, 14 S. & R., 179; *Taylor v. Higgins*, 3 East, 169.

We do not contend that Emery's check was not the same as money; we admit it was; but we only wish to show what must be proved under this declaration, and the strictness of proof required.

II. There must be a *payment* of money.

So, while we concede the check given by Emery to be equivalent to money, we say it was delivered as a *loan* to Joseph Hobson, and not as a *payment* on account of this defendant.

What is a payment? Webster defines "to pay" thus: "1, To discharge a debt; to deliver to a creditor the value of a debt, either in money or goods to his acceptance or satisfaction, by which the obligation of the debtor is discharged." Webst. Dict., h. t. Bouvier says, 2 Law Dict., 820, (1 Inst., 313, § 807,) "By payment, is understood, every way by which the creditor is satisfied, or ought to be, and the debtor liberated."

There must have been a *liability on the part of the defendant* to the recipient of the money, existing prior to its delivery to sustain this action. *Spencer v. Parry*, 3 Ad. & El., 331—S. C., 4 N. & M., 771, cited *infra;* 1 Stephn's N. P., 317, citing *Alcinbrook v. Hall*, 2 Wils., 309; *Moore v. Pyrke*, 11 East, 53; *Power v. Butcher*, 10 B. & C., 346; 1 Chit. on Pl., *350; *Taylor v. Higgins*, 3 East, 169.

It must have been a payment by plaintiff to cancel a debt of the defendant's, and have this effect. See authorities *supra* and *passim*. So, "where the sum which plaintiff has paid is in the nature of unliquidated damages or costs, and cannot be considered as strictly paid in discharge of a debt due from the defendant," &c., &c., the declaration must be special. 1 Stephn's N. P., *317.

III. Such payment must have been made not only "to the defendant's use," but "at *his* request." "Assumpsit lies to recover money paid for another at his request." 1 Stephn's N. P., *317, citing 2 Wils., 309. The next sentence is, "To sustain the com-

Emery v. Hobson.

mon count for money paid by the plaintiff to the defendant's use, and at his request, it is essential that the plaintiff should have paid his money for the defendant." 3 Stephn's N. P., *317, citing 11 East, 53, &c., &c.

Chitty, to the same effect, says: "If money be lent to a third person at defendant's request, and both be liable to repay it, the one on a loan, and the other in respect of his collateral engagement, which must be in writing, the count against the latter must be special." 1 Chitty on Pl., *350, citing 1 Saund., 211, b, &c., &c.

Mr. Chitty continues, in the next succeeding paragraph: "To sustain the common count for money paid by the plaintiff for the defendant's use and at his request, it is essential, first, that the plaintiff should have paid money for the defendant; and secondly, that such payment should have been made at the defendant's request, express or implied." Id., citing 10 B. & C., 346, and other cases cited *supra*.

In *Spencer v. Parry*, 3 A. & E., 331, before mentioned, the defendant took a house from the plaintiff agreeing to pay certain taxes for which the landlord was liable by statute; the plaintiff having been obliged to pay those taxes through defendant's default, sued him for "money paid." It was held that the action could not be maintained, but should have been upon the special agreement. "The plaintiff's payment," (said the Lord Ch. Just., in the opinion,) "delivered the defendant from no liability except what arose from the contract between them." [Here defendant was delivered from *no* liability.] "The tax remained due by his default, which would give a remedy upon the agreement, *but it was paid to one who had no claim upon him, and, therefore, not to his use*." [MEM. The words italicised here are italicised in 1 Smith's Lead. Cas., 534—*74]

To the same effect is the case of *Lubbock v. Tribe*, 3 M. & W., 607. Tribe gave his check for money due from him to the K. Co., the plaintiffs receiving it as the company's agents. It was afterward lost, and the plaintiffs agreed with the defendant that

he should give a new check, on their indemnifying him. No new check was given, but the plaintiffs, having been obliged to pay the amount, brought this action for money paid, which was held not sustainable. "On the special agreement," (said Parke, Baron) "I think an action might be maintained, but not for money paid, because the payment of the money did not exonerate the defendant from any liability at all. It is not money paid to his use," &c., &c., in 1 Smith's Lead. Cas., 234. Here, it was merely a loan for Joseph Hobson's use.

Where the plaintiff, a broker, agreeing to buy stock for an undisclosed principal—who, owing to a rise, refused to complete the bargain—paid the difference, it was held he could not recover it as money paid. *Child v. Morley*, 8 T. R., 610.

The American cases of similar purport are numerous.

"Assumpsit for money paid does not lie for moneys paid by plaintiff to remove an incumbrance upon land which defendant has represented and undertaken to be free from incumbrance." *Conant v. Dewey*, 21 N. H., 353.

A. promised B. to pay part of expenses of suit against B.; *held*, that B. could not recover for moneys advanced in defence as paid to A.'s use. *Knox v. Martin*, 8 N. H., 154.

A. and B. were bound, as principal and surety, to C. B. married C.'s daughter, and C. gave B. the bond. *Held*, B. could not maintain assumpsit for money paid, against A. *Butterworth v. Ellis*, 6 Leigh., 106.

S. acted with B. and F., as trustee, but no part of the trust-moneys ever actually came into S.'s hands; *held*, not liable under count for money had and received. *Stowe v. Bowen*, 99 Mass., 194.

In *Mariot v. Lister,* 2 Wills., 141, cited in 1 Dane's Ab., ch. 9, art. 18, § 1, it is said: "The word "lent" is a technical term, and can only be for money lent to the defendant himself, and not for money loaned to a third person. If it be advanced or paid to a third person, it is not money lent." The word "paid" is equally technical, and the argument the same.

Unless the defendant's request be alleged, the declaration is demurrable. *Burdick v. Glass Co.*, 11 Vermont, 19; *Wharton v. Franks*, 9 Porter, (Ala.) 232. Not only ought the request "to be averred in terms, but proved." *Victors v. Davies*, 12 M. & W., 758.

The necessity of a request is recognized in those cases which hold that all volunteer payments of one man's debts by another, have been held to create no liability, and to imply no promise of repayment. *Jones v. Wilson*, 3 Johns., 434; *Menderback v. Hopkins*, 8 Johns., 436; *Beach v. Vandenburgh*, 10 Johns., 361; *Wallkill v. Mamakating*, 14 Johns., 87.

Though the action for money had and received has been declared to be in effect a bill in equity, (2 Greenl. on Ev., § 117; *Moses v. McFarland*, 2 Burr., 1012,) yet it will not lie in favor of a surety who has been compelled to pay the debt of his principal. Of course, money paid will lie in such case. This shows the distinction to be observed. *Ford v. Keith*, 1 Mass., 139. To same effect, *Child v. Eureka, &c.*, 44 N. H., 354, cited *ante*.

We think no case can be found where a promissory note has been introduced under the count for "money paid," even against the maker; for though it can be introduced to show that the defendant has "had and received" money which he should equitably refund to the plaintiff under a count of that description, yet it is only so admissible against some person who has actually received the money the note represents. Indeed, many cases restrict it to immediate parties between whom money actually passes. Per Lord Ellenborough, in *Waynam v. Bend*, 1 Camp., 175; *Thompson v. Morgan*, 3 Camp., 101.

Where the defendant signed as surety for the other maker, the plaintiff cannot resort to the money counts. *Wells v. Girling*, 3 Moore, 79; same case, 8 Taunt., 737.

Nor is a note admissible under them if it express no consideration. *Saxton v. Johnson*, 10 Johns., 418. Nor a premium note. *Atlantic &c. Co. v. Sanders*, 36 N. H., 252, 270.

Accordingly, the supreme court of the United States held that,

"Though an indorser of a negotiable note may ordinarily be declared against in an action for money had and.received, yet if the plaintiff's evidence shows that he was a mere accommodation indorser, this action will not lie; he can be charged *only upon a special count* on the note." *Page's Admrs. v. Bank of Alexandria*, 7 Wheat., 35.

If our court assent to the same reasoning which convinced the minds of Marshall and Story, Washington and Livingston, then the defendant's objection must be held fatal to the maintenance of this action.

To hold differently would be an abuse of language, and do violence to common sense.

After reading the agreed statement of facts, can anybody say that Daniel F. Emery really paid and expended any money for the use of Frank O. L. Hobson; when the evidence is undisputed that there was no payment at all, but merely a loan; that it was lent to Joseph Hobson and never benefited this defendant in any way; and all was done before he ever knew of the loan; so he did not request it. To say that this declaration satisfies that rule in assumpsit on a contract, which the New Hampshire court declares has no exception, that "the consideration must be truly stated and proved as laid," would be to make the truth a lie.

Equity does not require this distortion of the facts into a falsehood.

Frank Hobson never had a dollar of this money. It was never understood by anybody that he was to derive any benefit from the loan of it. Nor is it true that plaintiff let it go upon the credit of Frank's name, for Emery had delivered his check to Joseph Hobson, who had cashed it before Frank ever knew of the existence of the check in controversy. At most, Emery only let his money go in the faith that Frank would indorse if asked to do so by Joseph Hobson. It is not the case of a man lending a friend his name that he may obtain credit; but Emery leads this young man into assuming the indorsement of this check. There is no reason, then, why the defendant should be held beyond the fair

limits of the legal responsibility he was thus induced to incur—the letter of his bond. That he must and will meet, whatever it may be, but does object to its being extended, by strained inferences, the perversion of plain terms, or a legal construction contradictory to conceded facts.

## II.

If the check supports this declaration yet we claim that no recovery can be had upon it against Frank Hobson, since the loan by Emery to Joseph Hobson had been effected prior to the indorsement, which, therefore, was based upon a past consideration.

If the consideration had passed, the act must have been done at the request of the defendant in order to hold him. *Comstock v. Smith*, 7 Johns., 87; *Hicks v. Burhans*, 10 Johns., 243; *Parker v. Crane*, 6 Wend., 647; *Chaffee v. Thomas*, 7 Cow., 358.

An executed consideration will support no other promise than that implied by law, viz: that he for whom it is executed will pay on request. *Bailey v. Bussing*, 29 Conn., 1.

There is an obvious and recognized distinction between *motive* and consideration. *Philpot v. Gruninger*, 14 Wall., 570, 576 & 7. The court there say that the defendant's agreement "was the consideration,—not its performance." So here, Emery's reliance upon Joseph Hobson's promise that Frank would indorse, and his expectation that the latter would do so—and not the indorsement itself—was really the consideration for the loan. The indorsement was not the consideration of the loan, for it had been made before the defendant knew of it; nor, then, could the loan in law, be the consideration of the indorsement, though it might be a motive for making it. The real motive, or inducement, no doubt, was to gratify Joseph Hobson by complying with his request, without particular inquiry about reasons for asking it, or thought about results.

Suppose the defendant had refused to sign; Joseph Hobson would have had the loan all the same, and the plaintiff would have held this check as evidence of it. It was problematical whether he would indorse or not; if he consented or refused Joseph Hobson's

legal liability remained unchanged. Frank Hobson was under no obligation, legal or moral, to affix his name to this paper. No money was parted with by reason of any promise of his; and any promise to assume a legal liability for a loan already perfected and past, (as much so as if made a year before), without any new consideration therefor, was *nudum pactum* and void.

If the transaction between the parties had been put in writing would it not have read, substantially, thus:

"Whereas, Daniel F. Emery has heretofore lent Joseph Hobson six thousand dollars, in the expectation that I would become surety therefor, (led so to believe by Joseph Hobson's promise that I should do so), I now hereby guarantee payment to said Emery of that loan, in case Joseph Hobson's check given therefor be not paid by him, or at the bank on which it is drawn."

Would not this show the guarantee to be based upon a previous, and not a contemporaneous, loan? Can there be any true statement of the transaction that does not disclose the promise of the defendants to be founded upon a past and fully executed consideration.

Then compare it with adjudicated cases!

Where the defendant gave the plaintiffs a writing to this effect: "In consideration of your having indorsed the undermentioned notes drawn by S. & Co., in your favor, we hereby hold ourselves accountable to you for them in the same manner as though said notes were drawn by us," it was held *nudum pactum*, as stating a past consideration. *Bulkley v. Landon*, 2 Conn., 404.

In a suit to recover the purchase money of a farm, the declaration based the promise upon the "consideration that the plaintiff had there, before that time, sold &c., unto the defendants a certain farm" &c; *held*, bad as stating a past consideration, and judgment was arrested. *Comstock v. Smith*, 7 Johns., 87.

The only exception is where the past consideration was executed at the defendant's previous request, or where it placed him under some moral obligation; neither of which exceptions applies in the present instance. Frank Hobson, so far from making a

prior request, had no previous knowledge of the loan to Joseph, derived no benefit whatever from it, and was not placed under any moral obligation with relation to it.

*Comstock v. Smith* was the case of land conveyed directly by the plaintiff to the defendant.

In *Chaffee v. Thomas*, 7 Cowen, 358, the same court made a similar decision upon a written promise of the defendant to pay for land previously conveyed by the plaintiff to a third person.

Where A., after drawing a bill of exchange on B., who accepted it, indorsed it to C., who re-indorsed it to A., in pursuance of an agreement (without consideration) that he should do so as a security for the payment of it by the acceptor and to add to its negotiability; on demurrer to a declaration against C., upon the bill, stating these special circumstances under which the defendant became indorser ; *held*, that the indorsement was void for want of consideration. *Britten v. Webb*, 2 B. & C., 483.

The previous indebtedness of A. to B., is not sufficient to support C.'s promise to pay the debt. *Bingham v. Kimball*, 17 Ind., 396.

Where a consideration is past and executed, it is essential to its validity that it arose at the request of the defendant. *Hatch v. Purcell*, 21 N. H., 544.

Nor will subsequent assent bind a party unless upon a consideration beneficial to him. Id., 546. *Doty v. Wilson*, 14 Johns., 378.

Even where the defendant was under a moral obligation, if there never existed any legal liability antecedent to the promise. *Mills v. Wyman*, 3 Pick., 207; *Dodge v. Adams*, 19 Pick., 429; *Shepherd v. Young*, 8 Gray, 152; *Cook v. Bradley*, 7 Conn., 57.

In the famous old case of *Hayes v. Warren*, Strange's Reports, 933, where the declaration alleged that the plaintiff had worked for the defendant who, in consideration thereof, afterwards promised, &c., a judgment rendered thereon upon default was held erroneous.

This case has been much criticised, but Judge Metcalf says: "It will be found, however, upon an examination of the history of

the doctrine in question, that there has been no relaxation of it; and that the case of *Hayes v. Warren*, stands on precisely the same grounds as the other cases, and could not have been decided differently without violating long established principles." And a comparatively recent case in New Hampshire is precisely similar in its decision and results to *Hayes v. Warren*.

The declaration setting out that the defendant on the day of the purchase of the writ, being indebted, &c., after, to wit, on the same day, promised to pay, was held bad, as basing the promise upon a past consideration. The judgment rendered on default (as in the case in Strange) was reversed and it was held no new judgment could be given thereon. *Johnson v. Greenough*, 33 N. H., 396. The same form of declaration was held bad in *Livingston v. Rogers*, 1 Caines, 583.

If it be fatal to *allege* the promise to be subsequent to the consideration, can it be any less fatal to *prove* it so?

Chitty, treating "of the consideration in regard to time," says: "In respect of time, a consideration is either: 1st, executed, or something done before the making of defendant's promise; 2d, executory, or something to be done after such promise; 3d, concurrent, as in the case of mutual promises; and 4th, continuing." Chitty on Cont., (6 Am. Ed.), *61.

As to executed considerations, he then goes on to state the necessity for a precedent request, and an allegation of it, and to lay down the law as established by multitudinous cases.

Now, was not all done, by way of consideration therefor, that ever was done, before Frank O. L. Hobson made any promise?

Judge Metcalf, (in his essay in the Am. Jur., No. xlii, page 271) says: "When a promise is made to pay the already existing debt of another, there must be some new consideration, or the promise will be void. The original consideration, which supports the principal's contract, cannot be made to operate upon the new promise. Such promise is *nudum pactum*."

That such is the case where one not party to a note, after its delivery, puts his name upon the back, see *Tenney v. Prince*, 4

Pick., 385; *Courtney v. Doyle*, 10 Allen, 122; *Greene v. Shepherd*, 5 Allen, 589.

How does the case of this check differ from such an one?

The plaintiff will probably say that it was originally agreed that the defendant should indorse the check.

But Frank Hobson was not party to such original agreement, if made; nor was Joseph Hobson his agent in making it, nor did he profess to be, or to have any authority from Frank.

The agreement was completed, executed and delivered before Frank saw it: all the difference his indorsement made was that it enabled Emery to sue the maker in his own name.

At all events, the consideration was fully executed and past before the indorsement.

## III.

The plaintiff's laches is sufficient to discharge the defendant, even if originally liable. No "grace" is allowed on checks. R. S., c. 32, § 9; Lead. Cas. on Bills, &c., 716; *Morrison v. Bailey*, 5 Ohio St. R., 13.

So that, to hold an indorser, it must be presented on the day of its date; Id.; or next succeeding day. *Smith v. Jones*, 20 Wend., 192; *Mohawk Bank v. Broderick*, 13 Wend., 133, note; *Gough v. Staats*, 13 Wend., 549; *Veazie Bank v. Winn*, 40 Maine, 60; *Down v. Halling*, 4 B. & C., 330.

The words "waiving demand and notice," on an instrument of this kind are senseless, and must be wholly disregarded.

A check, as to its negotiability and some other incidents, is similar to a bill of exchange; so that some courts, when treating of them with reference to particulars wherein they agree, have carelessly spoken of them as the same; but Judge Story quotes, "*nullum simile est idem*," and clearly distinguishes them. *In re* Brown, 2 Story's Reports, 502, citing 4 Kent's Com., 549, note,* 4 Ed.

It is an instrument *sui generis*, appropriating the amount in the hands of the bank to the holder of the check; while a note or bill of exchange does not charge any particular fund. 2 Story's Reports, 516, 517.

There is no express promise to pay.    Joseph Hobson directs the First National Bank, out of his funds there deposited, to pay six thousand dollars ; the law therefore implies a promise on his part to pay if the bank does not pay; but certainly, he would not be liable to a suit upon this promise, until the check had been presented at the bank and payment refused, and he notified of the refusal.    Can it be that the indorser is subject to a greater liability than his principal ?    Can Frank Hobson be held when, upon the same state of facts, Joseph Hobson would not be ?

Is there a particle of evidence in this case to show that Joseph Hobson (or this defendant either, for that matter,) was informed of the bank's refusal before the bringing of this action ? and without such proof how can the plaintiff expect to recover ?

"Waiving demand and notice" upon a note has a fixed meaning. It is an agreement to dispense with a "demand upon the maker of the note at the time and place where he (and not another) undertakes to pay it personally, and "notice" of his failure to do so.

Either these words must be treated as surplusage in their present use, (as they were in *Malbon v. Southard*, 36 Maine, 147 ; *Lowell v. Gage*, 38 Maine, 35,) or else the phrase is to be taken in its ordinary acceptation, and the demand upon the maker, after the bank's refusal, and notice of his delinquency, were all that were waived.

Presentment of the check at the bank for payment was not waived.    As above remarked, Joseph Hobson never became liable himself, till after presentment at the bank ; then presentment was not waived by the defendant, and by reason of non-presentment he is released.    "Waiver of notice is not waiver of demand." R. S., c. 32, § 10. .*Drinkwater v. Tebbetts*, 17 Maine, 16 ; even if preceded by the words, "I hold myself accountable," &c. *Burnham v. Webster*, 17 Maine, 50 ; *Bank v. Jones*, 6 Mass., 524.

Nor does it make any difference that this was an accommodation indorsement; nor would it even if Joseph Hobson had no funds at the bank, (though he evidently had.)    *Warder v. Tucker*, 7 Mass., 449.

Mr. Parsons, in 1 Parsons on Notes, 569, note k, says that, prior to being fixed by demand and notice, an indorser is only an indorser ; by these steps, (or by a waiver of them, we say,) "he becomes a surety." Then he is entitled to the usual rights of sureties, and can claim that the creditors shall use "due diligence" in applying the designated funds to the satisfaction of the debt, the check putting them entirely at the holder's disposal for this purpose ; therefore, he cannot sleep over it, and, through gross laches, allow them to be taken out of his reach and charge the surety. *Down v. Halling*, 4 B. & C., 330, 333, cited *supra*.

To maintain an action on the guaranty of a note, the plaintiff must show the use of due diligence. *Isett v. Hoge*, 2 Watts, (Penn.) 128; *Oxford Bank v. Haynes*, 8 Pick., 423, 430, note 1.

It will be noticed this is the case of a guarantor, (in 8 Pick.,) and not of an indorser. If strict punctuality were waived by the indorsement on this check, yet (we say) it ·cannot be pretended that a presentment at the bank was dispensed with entirely. This would be to make the instrument *felo de se ;* and Frank Hobson assuming for Joseph a greater responsibility than the latter did for himself. If these words had any relation at all to presentation at the bank—which we deny—they could only be construed as a consent to its being made at a later date than June 11, or 13, 1870, without fixing any other day for it, but leaving it to be done within a "reasonable time."

The twelfth day of June, 1870, was Sunday; it is probable that it was past the bank hours of Saturday, the eleventh, when the indorsement was made, and that suggested this waiver to Mr. Emery's mind.

Where there is no express contract as to the time wherein an act is to be done, it must be in a reasonable time. *Atwood v. Clark*, 2 Maine, 249.

Thirteen months was not a reasonable time for presentment of the check. In the interim, Joseph Hobson, from having sufficient funds in the bank to meet it, had come to have no deposit, and become insolvent.

APPLETON, C. J. This is an action of assumpsit against the defendant, for so much money paid and expended by the plaintiff to the use of the defendant, at his request. To support the declaration, the plaintiff introduced a check, signed by Joseph Hobson, payable to the defendant or his order, and by him indorsed "waiving demand and notice," payment of which had been refused.

The check was given for a loan of money by the plaintiff, to Joseph Hobson, in which the defendant had no interest.

It is objected that here was not a payment, but a loan, and that no prior existing liability was thereby discharged, and, therefore, that this action is not maintainable.

In *Lewis v. Campbell*, 14 Jur., 396, it was held, in order to maintain an action for money paid, that it is not necessary that the defendant should be relieved, by the plaintiff's payment, from a liability to a third person. In *Brittain v. Lloyd*, 14 M. & W., 762, it was argued that this form of action could not be maintained unless the effect of the payment was to relieve the defendant from some liability for the amount to the party to whom payment was made, and that otherwise it could not be "money paid for the defendant's use;" and reliance was placed upon the case of *Spencer v. Parry*, 3 Adol. & Ell., 331, to sustain this proposition, and we have been referred to the same authority by the learned counsel for the defendant in the present case. Referring to that case, Pollock, C. B., says: "This proposition, however, is not warranted by the decision of *Spencer v. Parry*, though some expressions in the report of the judgment give a countenance to the argument of the learned counsel; nor can the proposition be maintained; for it is clear, that, if one requests another to pay money for him to a stranger, with an express or implied undertaking to repay it, the amount, when paid, is a debt due to the party paying from him at whose request it is paid, and may be recovered as a count for money paid; and it is wholly immaterial whether the money is paid in discharge of a debt due to the stranger, or as a loan or gift to him; on which two latter suppositions the defendant is relieved from no liability by the payment. * * In every case, therefore,

Emery v. Hobson.

in which there has been a payment of money by a plaintiff to a third party, at the request of the defendant, express or implied, on a promise, express or implied, to repay the amount, this form of action is maintainable."

The payment to Joseph Hobson is fully proved. The request to pay, and the promise to repay is inferable from the defendant's indorsement. The indorsement was made with a full knowledge of all the facts, and before the plaintiff received the check as a completed contract. The loan to the maker of the check is alike the consideration for his signature as for that of the indorser. No other consideration is necessary than the loan to the maker thus made, upon the joint credit of the parties to the check. *Bickford v. Gibbs*, 8 Cush., 154; *Colburn v. Averill*, 30 Maine, 310; *Simons v. Steele*, 36 N. H., 73.

The defendant indorsed the check "waiving demand and notice." An indorser who waives demand and notice is not entitled to any demand on the maker and notice of non-payment. *Woodman v. Thurston*, 8 Cush., 157.          *Defendant defaulted.*

WALTON, DICKERSON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.