## BURNETT et al. v. BANK OF DUNCAN.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1929.

No. 2766.

James F. Byrnes, of Spartanburg, S. C. (Sam J. Nicholls and C. C. Wyche, both of Spartanburg, S. C., on the brief), for appellants.

John G. Galbraith, of Spartanburg, S. C. (Evans & Galbraith, of Spartanburg, S. C., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and COLEMAN, District Judge.

NORTHCOTT, Circuit Judge. This is an appeal from an order of the judge of the District Court of the United States for the Western District of South Carolina sustaining an order of the referee allowing the claim of the Bank of Duncan against the estate of L. G. Miller, bankrupt, in the sum of $114,-589.93.

The bankrupt, L. G. Miller, was for a number of years the county treasurer of Spartanburg county, S. C. and at the same time president of the Bank of Duncan. The discovery of certain irregularities in Miller's accounts as county treasurer led to an investigation by the county board of commissioners of Spartanburg county, while an examination of the books of the Bank of Duncan resulted in its being closed by the state bank examiner and the subsequent appointment of a receiver to take charge of its affairs.

On December 15, 1924, the bank was closed and a receiver appointed. Miller was declared bankrupt, and Bobo Burnett, one of the appellants, appointed trustee of the estate.

Auditors were selected by the county and the receiver of the bank, and an audit made. The result of the audit was the finding, among other things, that Miller, as county treasurer, had misappropriated funds of the county of Spartanburg, to the extent of $792,-544.95, and the county filed a claim against the bankrupt's estate for that sum. This claim was allowed without objection.

At the time of the closing of the bank, Miller's account, as treasurer, showed a balance of $240,492.24, out of a total of deposits of $293,310.23, and Miller's personal account showed a balance of $4,849.06. The audit further disclosed the fact that Miller had caused to be credited to his personal account $119,438.99 of the funds of the county, $98,-438.99 by direct deposit, and $21,000 by transfer from his account as treasurer to his personal account.

The cashier and bookkeeper of the bank seem to have been subservient tools of Miller in these transactions.

The auditors undertook in their report to readjust the two accounts, and transferred the $119,438.99 back to the account of Miller as treasurer, and charged the same amount to Miller's personal account, which then, accord-

ing to the audit, showed an overdraft of $114,539.93, and it was for this amount that a claim was filed against the bankrupt estate by the receiver of the Bank of Duncan, and allowed by the referee. This action of the referee was sustained by the District Judge. The county and the trustee appealed.

Under the facts as above stated it cannot be controverted that the county of Spartanburg had a just and valid claim for the total amount of the stolen funds. This claim was allowed by the referee without objection, and, indeed, no valid objection that we can think of could have been offered. It, therefore, remains to be determined whether the bank's claim growing out of the one and the same defalcation should also be allowed. We think not.

Undoubtedly the decree of the lower court permits a double filing of claims on the one debt. The law requires the pro rata distribution of dividends upon such debts only as existed at the time of the bankruptcy. In re United Grocery Co. (D. C.) 253 F. 267; Surety Co. v. De Carle (C. C. A.) 25 F.(2d) 18; White v. Knox, 111 U. S. 785, 4 S. Ct. 686, 28 L. Ed. 603.

Such double filing is certainly unjust, not only to the county, but to the other creditors of the bankrupt. Maryland Casualty Co. v. Fouts (C. C. A.) 11 F.(2d) 71, 46 A. L. R. 852; American Surety Co. v. De Carle (C. C. A.) 25 F.(2d) 20; Jenkins v. National Surety Co., 277 U. S. 258, 48 S. Ct. 445, 72 L. Ed. 874.

At the time of its closing, the bank had not lost a dollar by Miller's manipulation of his personal account and as treasurer. If the bank incurred any liability to the county, it was because of the corrupt action of its officers and employees in allowing Miller to appropriate to his own use funds which they knew belonged to the county. It is true that funds were corruptly placed in the wrong account and then drawn out, but the bank had not actually paid out of the two Miller accounts as much as it had received. The record shows that large sums of the stolen money were used to pay notes due the bank itself.

Miller's actions in manipulating the two accounts did not create an overdraft.

"When a depositor's account with a bank shows that he has drawn and been charged with more money than he has deposited, or more than has been placed to his credit on the books of the bank, it is usually said that his account is overdrawn, and that an overdraft exists." Bacon v. United States (C. C. A.) 97 F. 35.

It is contended that merely by participating in the audit the county is concluded by the finding of the auditors that an overdraft existed in Miller's personal account. We do not think so. But, even should this be true, the other creditors of the bankrupt and the trustee are certainly not bound by the conclusions stated in the audit. The situation must be considered in the light of the condition of the books of the bank at the time of its closing, not as they are afterwards made to appear.

A great deal has been said to the effect that the bank's claim should be allowed to be filed because not to do so would be giving the county a preferred lien on the assets of the bankrupt's estate or of the bank. We cannot see how this follows. Certainly to allow the filing of the county's claim as a general creditor of the bankrupt, and to reject the bank's claim, sets up no lien in favor of the county as against the other creditors, either as to the bankrupt's estate or the assets in the hands of the receiver of the bank.

It is strongly urged that to reject the bank's claim would be equivalent to holding "that where a thief steals from two persons, whichever of his victims shall be the first to prove his claim, he or it thereby becomes a preferred creditor in the distribution of the estate of the thief." This argument is interesting and intriguing, but, upon analysis, is not sound as applied to the facts of this case. There was only one theft, and that was when Miller stole from the county. It is true that, with the knowledge and connivance of the officials of the bank, of whom he was one, he left the stolen money with the bank for a time, but he took no more of these funds out of the bank than he put in. If the bank incurred any liability to the county on account of the transaction, it was because of the corrupt action of the bank's officials. If Miller had not been president of the bank, and if the other officials of the bank had had no guilty knowledge, the transfer of funds from Miller's account as treasurer to his personal account on his order would not have made the bank liable, because Miller as county treasurer had the right to the possession of the funds, and the right, as far as the bank was concerned, to order the transfer of the funds, or to withdraw them as he saw fit.

Funds deposited in a bank become the property of the bank, and a transfer from one account to another in no way affected the ownership of the funds. As Judge Parker of this court well said in the case of Cory Mann George Corp. et al. v. Old et al., 23 F. (2d) 803:

"When funds of complainants were de-

posited with the bank on general deposit, they ceased to be funds of complainants, and became the property of the bank, and the bank thereupon became a mere debtor of complainants for the amount of the deposits."

Miller's estate is unquestionably liable to the county for the full amount of his defalcation. It is true that the bank is liable also for that part of the misappropriation which is represented by funds which he deposited in the bank and later appropriated to his own use with the knowledge of its officials; but the bank cannot prove a claim against the bankrupt estate unless it discharges that liability, for the simple reason that until it does so it has no claim against the estate. The claim is in favor of the county, and the fact that there is liability on the part of the bank for a part of it does not make the bank a creditor of the estate or authorize it to file a claim. The unsoundness of appellee's contention is readily apparent, if a case be supposed where the estate of the defaulter would pay a large dividend and that of the bank a small dividend. In such case the bank would actually profit by its wrong, if allowed to prove against the estate. There can be no question of the right of the county to prove against the estate of the bankrupt for the full amount of the default. It may proceed against the bank, also, subject to the limitation that it cannot collect from both on the part of the claim proved against the bank a sum in excess of the amount of its loss.

The county's claim was properly allowed. To allow the bank's claim would be in effect to allow a double filing on the same debt, and consequently unjust to the other creditors of the bankrupt's estate. The order of the District Court is accordingly reversed.