OPINION. Black, Judge: Petitioner contends that it is entitled to deduct from its gross income for the calendar year 1936 the amount of $764,914.24 paid in connection with its guaranty contract dated November 6,1929, either as an ordinary and necessary business expense or as a loss. The applicable statute is the Revenue Act of 1936, and the material provisions thereof are set forth in the margin.[1] The respondent contends that the payment of $764,914.24 was a capital investment or something in the nature thereof and, therefore, not deductible by petitioner. In the alternative, he contends that if any amount is deductible by petitioner either as an ordinary and necessary business expense or as a loss, the amount so deductible should be limited to $350,139.21. Briefly, he arrives at this amount by further contending that $6,799,446.67 of the distributions received from Anglo as dividends was income to Export available for dividends instead of a return of capital, as petitioner maintains, and that, therefore, on December 31, 1935, Export had a balance of earnings on hand available for dividends of $115,233.29, which, added to its earnings for the first 6 months of 1936 of $921,704.29, gave a total of $1,036,937.58 available for the payment of the dividend on June 30,1936, of $1,912,-285.60, thus leaving $875,348.02 ($1,912,285.60 minus $1,036,937.58) as the amount to be made up by the guarantors, of which petitioner’s share was 40 per cent or $350,139.21. For many years prior to 1929 petitioner and its predecessor, the Standard Oil Co., had been selling a large amount of petroluem products to Anglo. In order to retain this market and other export business petitioner and 3 other interested corporations (Standard Oil Co. of Louisiana, Carter Oil Co., and Humble Oil & Refining Co.) organized Export under the provisions of the “Webb Act,” which was a Congressional Act designed to promote export trade. Export was organized November 26, 1928. In November 1929 an offer was made to the stockholders of Anglo to acquire their stock in Anglo in exchange for preferred stock of Export, which latter stock was to be guaranteed by petitioner and the 3 other interested corporations as to both its par value in case of liquidation and an annual dividend of 5 per cent. The offer was accepted and Export thus acquired all the stock of Anglo. Petitioner and the 3 other interested corporations, which owned ail the common stock of Export, jointly and severally guaranteed to the holders of the preferred stock of Export the face value of the shares on liquidation and the payment of the dividends thereon. Tn 1934 the Standard Oil Co. assumed the guaranty obligations of Humble Oil & Refining Co. in consideration of a payment by that company to Standard Oil Co. of $3,600,000. In 1935 the Standard Oil Co. acquired from Humble Oil & Refining Co. the 30 shares of common stock of Export, and in 1936 the Standard Oil Co. acquired from petitioner, Standard Oil Co. of Louisiana, and Carter Oil Co. all of the remaining shares of the common stock of Export, but it did not assume the guaranty obligations of these companies. Petitioner, although no longer a stockholder of Export, still remained liable under its guaranty contract dated November 6, 1929. During the period from January 1, 1930, to June 30, 1936, inclusive, the preferred stockholders of Export were paid dividends of $24,860,118.30. Of this amount $21,271,-525.37 was paid by the guarantors, and of the amount paid by the guarantors petitioner paid 40 per cent or $8,508,610.15. Only $764,-914.24 of the amount paid by petitioner is involved in this proceeding. The years in which such other amounts were paid are now closed. The amount of $764,914.24 represents 40 per cent of the final dividend of $1,912,285.60 paid on the preferred stock of Export for the first 6 months of 1936. The amount was paid by petitioner on June 30,1936, after it had ceased on May 19, 1936, to be a stockholder of Export. The respondent, in contending that the payment by petitioner of $764,914.24 was a capital investment or at least was one which is not deductible under any provision of section 23, Revenue Act of 1936, argues that the payment of the final dividend on June 30, 1936, of $1,912,285.60 was a primary obligation of Export; that petitioner and the other guarantors were only secondarily liable; that their liability could only have been enforced upon default by Export; and that “It is a principle of general law that payment by one secondarily liable creates an obligation on the part of the primary obligor to reimburse the guarantor making the payment. 24 Am. Jur. 955-956.” Petitioner argues in rebuttal as follows: Respondent seems certain that Petitioner acquired a right of recoupment from Export Corporation when it made its payment under the guaranty on June 30, 1936. What the Respondent overlooks is that Petitioner’s guaranty (Stipulation, Exhibit 8) ran solely and exclusively to the shareholders of Anglo American, the eventual Preferred shareholders of Export Corporation. This obligation was a primary one, rather than secondary, and was created to induce the Anglo shareholders to turn over their Anglo shares as a step by Petitioner in achieving the preservation of its English market. Export Corporation was not a party to the guaranty agreement and had no part in it. Any payment under the agreement made by Petitioner was solely a matter between it and the Anglo American shareholders. We are unable to agree with petitioner. The agreement itself states that “The guaranty hereby given shall be deemed a continuing guaranty.” Guaranty is defined in 38 C. J. S. 1129 as follows: A “guaranty” or “guarantee” may be generally defined .as a collateral promise or undertaking by one person to answer for the payment of some debt or .the performance of some contract or duty in ease of the default of another person, who in the first instance is liable for such payment or performance; a collateral promise or undertaking to pay a debt owing by a third person in case the latter does not pay. “A guaranty may be one of various kinds, such as an absolute or conditional guaranty, a guaranty of payment or of collection, a general, special, continuing, or unlimited guaranty, or a letter of credit.” 38 C. J. S. 1139. In the instant proceeding, as noted above, the agreement of November 6,1929, states that the guaranty thereby given shall be deemed “ a continuing guaranty.” In 38 C. J. S. 1142, “A continuing guaranty is one which is not limited to a single transaction, but which contemplates a future course of dealing, covering a series of transactions, generally for an indefinite time or until revoked.” In 38 C. J. S. 1130, it is stated: A guaranty in its technical and legal sense has relation to some other contract or obligation with reference to which it is a collateral undertaking; it is a secondary and not a primary obligation. Numerous authorities are cited in the footnote for the above proposition, including Howell v. Commissioner, 69 Fed. (2d) 447. In that case the Circuit Court of Appeals, Eighth Circuit, among other things said; That in the case of suretyship or guaranty there is an implied agreement on the part of the principal debtor to reimburse his surety or guarantor is unquestioned. See Melletee Farmers’ Elevator Co. v. H. Poehler Co., (D. C.) 18 F. (2d) 430; In re Dailey et al (D. C.) 19 F. (2d) 95; United States Fidelity & Guaranty Co. v. Centropolis Bank of Kansas City, Mo., (C. C. A. 8) 17 F. (2d) 913, 917, 53 A. L. R. 295; National Surety Co. v. Salt Lake County (C. C. A. 8) 5 F. (2d) 34; (compare Jenkins v. National Surety Co., 277 U. S. 258, 48 S. Ct. 445, 72 L. Ed. 874); 28 C. J. 1037. We think the above authorities are clearly contrary to petitioner’s above quoted argument in rebuttal. As we view the question, petitioner’s argument would be meritorious only if the agreement of November 6, 1929, were in fact an original undertaking instead of a guaranty. Of course the mere fact that agreement itself recites that it shall be deemed “a continuing guaranty” would not make it so if all the other provisions of the agreement clearly indicated that the agreement was in fact an original undertaking. Cf. Coe v. American Fruit Growers, Inc., 100 Pac. (2d) 234. In 38 C. J. S. 1131, it is stated: Although a contract is in form to answer for the debt or default of another, if its leading purpose is to secure some Benefit to the promisor or to promote his interest, it will be regarded as an original undertaking. The use of the word “guaranty” or “guarantee” does not necessarily import a guaranty contract, for these words are often used in the sense of promise or agreement importing an original obligation on the part of a person executing such contract; but that construction is put on it only when it is plain that such was the intent of the parties. In the instant proceeding we do not think it is plain from a reading of the entire agreement that an original undertaking “was the intent of the parties.” Petitioner and the other guarantors only obligated themselves to pay so much of the principal upon liquidation or so much of the semiannual dividend “as said corporation [Export] shall fail to pay.” This we think made the agreement a continuing guaranty; made petitioner’s obligation secondary and not primary; and entitled petitioner to reimbursement from Export for all payments made by petitioner under the agreement of November 6,1929. 38 C. J. S. 1130, supra; Howell v. Commissioner, supra. That petitioner and the other guarantors made no effort to enforce any obligation to repay, over against Export, is without controlling significance we think. The important point is that it seems to us they had a legal right to be reimbursed, at least on final liquidation of Export, and their failure to endeavor to secure reimbursement for reasons satisfactory to themselves can not give rise to a deduction under section 23. In Glendinning, McLeish & Co., 24 B. T. A. 518; affd. 61 Fed. (2d) 950, we said: * * * It is well settled by the decisions of this Board that, where the taxpayer makes expenditures under an agreement that he will be reimbursed therefor, such expenditures are in the nature of loans or advancements and are not deductible as business expenses. * * * In that case the petitioner before us had entered into an agreement with a foreign corporation, referred to as the Belfast company, to purchase that company’s American business, and as a part of the consideration agreed, among other things, to guarantee upon request by the Belfast company the payment of all or any part of the 5 per cent cumulative dividends upon the outstanding preferred stock of the Belfast company to an amount not exceeding the sum of 5,000 pounds yearly. Belfast company agreed to reimburse the petitioner there “for any expenditures which you may make, pursuant to this clause of this agreement * * During the taxable years there involved the petitioner paid to the Belfast company certain amounts in accordance with its agreement to guarantee the dividends on the preferred stock of that company and sought to deduct such payments as ordinary and necessary business expenses. We held that the payments were not so deductible, and in affirming our decision, the Circuit Court of Appeals, Second Circuit, said in part: * * * Perhaps it would be going far to call these advances loans in the ordinary sense, but there is no occasion to define them precisely, for we are now concerned only with their deductibility for the computation of the net income for purposes of taxation, and it is enough to determine negatively only that in none of the taxable years was the payment made in that year an expense of the business. The agreement for reimbursement made them at least advances on the credit of the Belfast company, and requires that they be so treated in computing the net income of the petitioner. As such they were not deductible. Cohan v. Commissioner (C. C. A.) 39 F. (2d) 540; Island Petroleum Co. v. Commissioner (C. C. A.) 57 F. (2d) 992. In the instant proceeding there was no express agreement on the part of Export to reimburse petitioner, as there was in the Glendinning case. This, however, in view of all the evidence, we think is not material. Island Petroleum Co. v. Commissioner, 57 Fed. (2d) 992; certiorari denied, 287 U. S. 646.[2] There was an implied agreement to reimburse, Howell v. Commissioner, supra, and that is sufficient to hold the payment in question nondeductible as an ordinary and necessary business expense or as a loss. Island Petroleum Co. v. Commissioner,, supra. Cf. A. Giurlani & Bro., Inc. v. Commissioner, 119 Fed. (2d) 852. Petitioner, in contending that the payment of the amount of $764,-914.24 is deductible as an ordinary and necessary expense, relies principally upon Camp Manufacturing Co., 3 T. C. 467. In that case the petitioner was a corporation engaged in manufacturing lumber. It subscribed to 50 per cent of the capital stock of a new company which proposed to build a paper mill and to become one of its customers. This subscription having somewhat depleted Camp’s working capital, Camp decided to market some of the preferred stock of the new company. To do so it was necessary to guarantee the payment of dividends on this stock and its redemption at par. Four years later Camp paid the sum of $12,463 to the holders of such preferred stock in consideration for the cancellation and release of the guaranty. We held that the sum so paid was deductible by the petitioner there as an ordinary and necessary business expense. That case is distinguishable from the instant proceeding on its facts. There was involved in the Camp case no question of a right to reimbursement of the sum paid by Camp. The new company had not defaulted on the payment of any dividends and Camp had not been called upon to make any payment under its guaranty as such. The amount paid by Camp was made merely to secure a release from the obligation of guaranty. It was the payment of an original undertaking made solely for Camp’s benefit, and after making the payment Camp had no right to reimbursement from anyone, either express or implied. It seems to us that the only way that petitioner would be entitled to a deduction for the $764,914.24 which it paid in the taxable year on account of its guaranty of dividends on Export’s preferred stock would be to show that Export was insolvent and petitioner’s claim for reimbursement was worthless. Petitioner makes no claim that it could make such a showing. At the time of the dissolution of Export in 1936 it owned all the stock of Anglo, which it carried on its books at a cost of more than $73,000,000, and was clearly solvent. That the guarantors, including petitioner, made no effort to be reimbursed can not, as we have already said, give them the benefit of the deduction which they claim. We hold, therefore, that petitioner is not entitled to deduct from its gross income for the calendar year 1936 the amount of $764,914.24 paid in connection with its guaranty contract dated November 6,1929, either as an ordinary and necessary business expense or as a loss. Since we agree with the respondent’s principal contention, it becomes unnecessary to consider his alternative contention, involving as it does the effect of the distribution by Anglo of the $6,799,446.67 set out in our findings. Reviewed by the Court. Decision will be entered for the respondent. SEC. 23. deductions EROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. — All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * ******* (f) Losses by Corporations. — In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise. In this case the court'said in part: “It is immaterial that there was no express agreement on the part of the Texas corporations to repay the moneys advanced. Not only was such agreement implied in the agreement that only the net profits of the various enterprises were to be divided among the stockholders, but a promise to repay moneys laid out and expended for the use and benefit of another and at his request Is implied in law. 2 R. C. L. 776, 777; Scott et al., v. Norton Hardware Co. (C. C. A. 4th) 54 F. (2d) 1047; Emery v. Hobson. 62 Me. 578, 16 Am. Rep. 513. Here the expenditures were made for the use and benefit of the Texas corporations and upon an agreement made in their behalf. And it makes no difference in the result, if we construe the agreement as requiring repayment by the Texas corporations only In the event that their operations should prove successful. A loan is no less a loan because its repayment is made contingent; and a taxpayer has no right to treat it as a loss until the contingency has occurred or its worthlessness has been otherwise determined."