CITY OF MADISON, South Dakota; and Hilde Pipe & Gravel, Inc., A South Dakota Corporation; and Farmers and Merchants Cooperative Oil Company, Inc.; and Neville Construction Company, Plaintiffs,

and

Jebro, Inc., Plaintiff and Appellee,

v.

BAILEY–LAFFEY CONSTRUCTION, a/k/a Bailey–Laffey Asphalt; Bailey–Laffey Asphalt, Inc.; First National Bank, Brookings, South Dakota; Downtown Tire, Inc.; Hilde Pipe & Gravel; Dallas Laffey and James Bailey, Defendants,

and

Vantol Surety Company, Defendant and Appellant.

No. 17833.

Supreme Court of South Dakota.

Considered on Briefs Oct. 7, 1992.

Decided Jan. 27, 1993.

Scott Perrenoud of Fisher, Swanson, Hughes, Sioux Falls, for plaintiff and appellee.

Steven J. Britzman of Denholm, Glover & Britzman, Brookings, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

After Bailey–Laffey Asphalt, Inc.[1] (Bailey–Laffey) ceased operations and auctioned its assets, appellee Jebro, Inc. (Jebro), a supplier for Bailey–Laffey, commenced this lawsuit to collect debts from Bailey–Laffey. Several other parties, who are not parties to this appeal, intervened asserting rights to the auction proceeds. On April 4, 1991, appellant Vantol Surety Company (Vantol) moved for summary judgment claiming priority to the funds by virtue of possessing an assignment of the auction proceeds from Bailey–Laffey. Jebro filed a cross-motion for summary judgment, alleging it had priority because of an execution lien against the fund. All of these facts are developed more fully below. Both motions were denied.

On December 24, 1991, the trial court granted Jebro's second motion for summary judgment and ruled against all other parties to the litigation. Vantol filed notice of appeal on February 12, 1992. Vantol and Jebro are now the only parties to this appeal. Vantol raises three issues which have been condensed to the two issues below:

I.  Did the trial court err in granting summary judgment to Jebro, thus denying Vantol subrogation rights against the principal after full performance of its surety bonds, but prior to other claims against the principal? We hold that it did not.

II. Did Vantol have a valid, perfected security interest which gives it superior rights to the funds? We hold that it did not.

We affirm.

1. This corporation was resurfacing streets in Madison, South Dakota, and is no longer a party to this litigation.

## FACTS

In 1989, Vantol issued a Performance and Payment Bond to Bailey–Laffey to secure $26,791.00 for a street improvement project in the City of Madison. Jebro supplied $18,276.42 in materials to Bailey–Laffey for use in the City of Madison project.

Unable to pay its suppliers, Bailey–Laffey ceased operations and scheduled an auction sale of its equipment in early 1990. On or about February 14, 1990, Dallas Laffey, an officer of Bailey–Laffey, executed an "Assignment of Proceeds of Disbursement Auction Sale" to reimburse Vantol for any amounts to be paid by Vantol to cover suppliers under the bonds. First National Bank of Brookings, South Dakota[2] was designated as clerk for the auction and custodian of the proceeds. Dallas Laffey, not Bailey–Laffey Asphalt, Inc., is listed as the assignor of the auction proceeds on the document.

Unaware of this document, on March 23, 1990, Jebro entered into a written agreement with Bailey–Laffey to assure that Jebro would receive proceeds remaining after satisfaction of the bank's secured claim.

Following the auction on April 4, 1990, $28,776.78 remained in the auction fund after paying the bank's secured claims. Jebro then demanded those proceeds to pay debts Bailey–Laffey owed to Jebro. The bank, in its capacity as custodian of the proceeds, refused to pay Jebro. After failing to reach any agreement for the distribution of the funds, Jebro commenced this lawsuit. On June 20, 1990, Vantol responded by paying the proceeds of the City of Madison bond to the Lake County Clerk of Courts for distribution to the creditors. The following day, the clerk issued a $42,447.89 judgment lien in Jebro's favor against Bailey–Laffey for all debts owed to Jebro. This judgment represented the contractor's failure to make payment for the asphalt and other materials Jebro supplied to Bailey–Laffey. After Jebro received a pro-rata share of the bond in the amount of

2. Vantol and First National Bank are related corporations with offices in the same building.

$16,856.90, Bailey–Laffey's debt to Jebro was $30,750.90, including interest.

As a result of this lawsuit, several other parties intervened to lay claim to the auction fund. On December 19, 1991, the trial court granted summary judgment to Jebro awarding it the entire amount in the fund. Vantol followed with this appeal.

## DECISION

I. *The trial court did not err in granting summary judgment.*

■ Upon granting summary judgment for Jebro, the trial court awarded Jebro the entirety of the fund in dispute holding that Vantol could not assert subrogation rights to the fund because that would put the appellant in competition with the other creditors. When reviewing a grant of summary judgment, we premise our decision on the principle that affirmance of such a judgment is proper if there exists any basis which would support the trial court's ruling. *Ruple v. Weinaug*, 328 N.W.2d 857 (S.D.1983).

■ In support, we find *Wieland v. Westcott*, 64 S.D. 552, 268 N.W. 904 (1936) to be directly on point. *Wieland* involved the dissolution of a partnership with the surety paying the bond to cover the debts of the business. However, the debts exceeded the assets and the surety claimed entitlement to a pro rata reimbursement with the other creditors. In denying recovery to the surety, this Court held that generally, a surety may not claim subrogation against an insolvent debtor until the claims of creditors against the debtor have been paid in full. *Id.* 268 N.W. at 905. Thus, Vantol is prohibited from asserting subrogation rights until the claims against Bailey–Laffey have been satisfied.

We emphasize this prohibition includes even those debts not covered by the bond. "The same policy against permitting a surety to compete with the creditor for the insolvent debtor's assets requires that the surety be denied subrogation to security given to a creditor for several debts ·for only one of which the surety is obligated." *Id.* Under this holding, because Jebro is a secured creditor with some claims covered by the surety bond, Jebro is entitled to recover all of its claims against Bailey–Laffey before Vantol can assert subrogation rights.

With the law to support the trial court's findings, we hold that the trial court did not err in granting summary judgment to Jebro, thus denying Vantol's subrogation rights to the debtor's funds.

II. *Vantol's alleged secured interest does not create superior rights to the funds.*

■ By way of further legal contention to claim these funds, Vantol purports to possess a valid, perfected security interest either through possession of the auction sale proceeds or through an assignment by Bailey–Laffey, with said interest being superior to Jebro's equitable lien. This issue is reviewable because Vantol raised the issue in its "Resistance to Appellee's Second Motion for Summary Judgment."

When First National Bank, at Vantol's request, coordinated the auction of Bailey–Laffey's assets, the bank placed the proceeds in an account. With the bank acting as bailee to Vantol, Vantol claims to have an interest in the money because it possesses the funds through its bailee. *See* SDCL 57A–9–305. In the alternative, Dallas Laffey executed an "Assignment of Proceeds of Disbursement Auction Sale" to reimburse Vantol for any amounts paid by Vantol to suppliers under the City of Madison Performance and Payment Bond. Because the agreement was executed prior to Jebro's lien, Vantol asserts first rights to the funds. *See* SDCL 57A–9–203.

Once again, this Court looks to *Wieland* for the applicable law which held:

Wherever equitable principles are called in play, as they preeminently are in determining the rights and liabilities of sureties and in the distribution of insolvents' estates, they likewise forbid the surety to secure by independent contract with the debtor indemnity at the expense of the creditor whose claim he has undertaken to secure.

*Wieland* at 905 (quoting Jenkins v. National Surety Company, 277 U.S. 258, 48 S.Ct. 445, 72 L.Ed. 874 (1928)).

By using the auctioneer bank as a bailee to attach the funds and by obtaining an assignment of the funds from the debtor, Vantol, similar to *Wieland's* appellant's indemnity agreement, seeks to circumvent the above holding and deprive the creditor of the benefits of that rule. We hold that the existence of the bailment and agreement does not permit Vantol a back door in which to enter and deprive creditors of the claims for which the surety has undertaken to secure. *Id.*

Obtaining a security interest will not permit a surety to subvert the rights of other secured creditors. Thus, Jebro is entitled to the auction funds.

## CONCLUSION

In awarding the proceeds from the sale of the debtor's assets, we hold the trial court properly granted summary judgment to Jebro for whom the surety bond was designed to protect.

Affirmed.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

I would reverse and remand for a trial because a genuine issue of material fact exists as to whether the "assignment" was executed by Dallas Laffey as an individual or as "Secretary" of Bailey–Laffey Asphalt, Inc.

The trial court stated:

As relates to VANTOL SURETY, the Court finds that VANTOL is unsecured as a matter of law. First of all, the assignment that exists does not create a security interest against funds owned by BAILEY–LAFFEY ASPHALT, INC. The Assignor of the Assignment is clearly listed as DALLAS LAFFEY. The court suspects that that was probably a mistake in putting his name as the assignor, but the conclusion is still obvious, the Court cannot do what the parties intended, the Court can only do what the parties did. And in this they did not create a security interest.

The trial court erred in claiming the *Assignor* of the assignment is "clearly listed" as Dallas Laffey. I am attaching a copy of the assignment which shows Dallas Laffey signed as "Secretary."

The assignment itself raises questions as to whether the address shown on the assignment is Bailey–Laffey Asphalt, Inc's *business* address or Dallas Laffey's *residential* address and why Dallas Laffey, an individual, would make payments on behalf of Bailey–Laffey Asphalt, Inc., a business. Even the trial court "suspects that that was probably a mistake in putting his name as the assignor" but claimed the conclusion was still "obvious."

In doing so, the trial court ignored the affidavit of Thomas L. Raines that he witnessed the execution of the assignment by Dallas Laffey, as Secretary for Bailey–Laffey Asphalt, Inc. on 2–14–90 and the affidavit of Dallas Laffey that he signed the assignment as Secretary of Bailey–Laffey Asphalt, Inc. on 2–14–90.

What more does one need to do to surpass summary judgment in South Dakota? We should reverse and remand for a trial. SDCL 15–6–56(c); *State, Dept. of Revenue v. Thiewes*, 448 N.W.2d 1 (S.D.1989); *Wilson v. Great N.R.R. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968).