### In re HARPKE et al.

### DOYLE v. MILWAUKEE NAT. BANK OF WISCONSIN.

(Circuit Court of Appeals, Seventh Circuit. May 6, 1902.)

No. 827.

**1. BANKRUPTCY—PREFERENCES—PAYMENT OF SECURED NOTE.**

A bank held two notes of the same maker, one being secured by an indorser. The indorser paid the note on which he was liable with money furnished by the maker, of which fact the bank had knowledge, although it had no knowledge that the maker was insolvent. Within four months thereafter the maker was adjudged a bankrupt, and was in fact insolvent when the first note was paid. Held, that such payment was not a preference, within the meaning of Bankr. Act 1898, § 60a, which the bank must surrender as a condition to proving the second note against the bankrupt's estate, since the effect of its enforcement would not be to enable the bank to obtain a greater percentage of its debt than other creditors "of the same class."

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

This case arises upon the following facts: Robert Harpke and Frederick Maier, individually, and as copartners doing business as Harpke and Maier, July 24, 1900, were, upon their voluntary petition, adjudged bankrupts. The schedules accompanying the petition showed nominal assets of a little over twenty-two thousand dollars (22,000) and liabilities of a little over thirty thousand dollars (30,000), and appellee herein being scheduled as an unsecured creditor in the sum of two thousand dollars.

The proceedings having been referred to a referee and appellant having been appointed trustee, appellee, in the usual course of procedure, made proof of its claim to the extent of two thousand dollars; but to this written objections were filed by the trustee on the ground that the appellee had received a preference from the bankrupts to the extent of three thousand dollars by the transfer of that much property made within four months of the adjudication, and at a time when the bankrupts were insolvent; and that the effect of the enforcement of such transfer would enable the appellee to obtain a greater percentage of its debts than other creditors of the same class.

On the trial of this issue it transpired that the appellee, being the holder of a note, dated March 27, 1900, due July 27, 1900, made by the bankrupts and endorsed by one Paul Riesen of Milwaukee for the sum of three thousand dollars, which note was additional to and separate from the two thousand dollar note above referred to, received from Paul Riesen July 6th, 1900,—eighteen days before the adjudication of bankruptcy—his check for the amount of such note, the money used by Riesen in the payment of the note having been advanced by the bankrupts.

Upon this state of the facts the referee held, as a conclusion of law, that the payment of the three thousand dollar note, secured by the endorsement of Riesen, did not constitute a preference, such as would prohibit the allowance of the two thousand dollar claim of the appellee. On review in the District Court this finding was approved, upon the additional finding of fact that the payment was received by the appellee in good faith, without the knowledge of the insolvency of the bankrupts, or the fact that the funds were furnished by them, and believing payment to be made by and on behalf of the endorser. And thereupon the objections filed by the trustee were overruled; and from such order this appeal is prosecuted.

W. P. Bloodgood, for appellant.

Geo. P. Miller, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges.

GROSSCUP, Circuit Judge, after making the foregoing statement, delivered the opinion of the court:

The facts disclosed in the record fail to convince us that the appellee was without knowledge that the funds used by Riesen to pay off the three thousand dollar note had been furnished by Harpke and Maier. It seems probable that appellee knew, or should have known, the source of this fund. But there is no convincing proof bringing to appellee knowledge or notice that Harpke and Maier were then insolvent.

On this state of facts the question presented is this: Will appellee be debarred from proving its two thousand dollar claim because it received from the endorser payment of the three thousand dollar note, having reason to believe that the money therefor had come from the principal on the note, though in ignorance of such principal's insolvency?

Section 57, par. g, of the Bankrupt Act is as follows: "The claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences."

Section 60, par. a, is as follows: "A person shall be deemed to have

given a preference, if, being insolvent, he has  *  *  *  made a transfer of any of his property and the effect of the enforcement of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

There can be no doubt that had Riesen paid off the three thousand dollars with his own funds, thereby becoming a creditor of Harpke and Maier, the transfer of the three thousand dollars to him by his debtor would have been a preference within the meaning of the law. But appellee stood to Harpke and Maier in a different relation. Its claim was not against Harpke and Maier, alone, but against them with Riesen secondarily liable. The endorsement was an inseparable part of the value of the note. Without it the source out of which payment could be enforced was one thing; with it such source was quite another thing. In no sense can it be said that a note collectible only from the principal makers, is of the same class as a note that bears, in addition, the guaranty of a respectable endorser.

The foregoing sections, read together, limit the bar created by a preference to transfers made to creditors of the "same class." Nowhere in the act is "class" defined. The distinction is not necessarily marked by the line running between secured and unsecured creditors. To so hold would be to put workmen, clerks, or servants, having claims for earnings within three months before the date of the commencement of the suit, and others entitled by the law of the several states to priority, in the same class with general creditors, though the act provides that they shall, to a certain extent, be paid in full.

In the absence of specific definition of these words in the act itself, we must adopt an interpretation that will give to it the meaning most probably intended. Its ordinary definition (Bouv. Law Dict.) is that of a number of persons or things ranked together for some common purpose, or as possessing some attribute in common. Now, a claim against B endorsed by A has an attribute—practical and not merely academic—not possessed by a claim against B alone. Two such claims are as distinct in kind as a claim secured upon property and a claim unsecured. In each case the distinction consists in the added source out of which the claim may be collected and the added probability of its payment.

Nor can we conceive that Congress intended to put the appellee, or persons standing in like relations, in the situation that would follow an interpretation such as is insisted upon by the trustee. Let us recall that situation, interpolating, only, that payment was offered at the maturity of the note instead of previous thereto—a change that does not affect the argument as to the intention of Congress. The appellee held the two notes, the one secured by an endorser; the other unsecured. It had no knowledge of Harpke and Maier's insolvency. It had no knowledge that Riesen knew Harpke and Maier to be insolvent. It might well happen that though given the money with which to pay off the note, Riesen would have no knowledge of the principals' financial condition. Had the endorser, acting in good faith, received the money without knowledge of the insolvency, and at maturity or afterwards offered therewith to pay off the debt, and had such

offer been refused by the appellee, clearly the endorser would have been discharged. On the other hand, the acceptance of the money and its application to the note would likewise result in his discharge. Accordingly—should the trustee's contention be accepted—the appellee, whether it accepted or refused on maturity of the note the proffered money, ran the chance of discharging the endorser, with the possible result, too, of being compelled to repay the money received. No such situation of uncertainty could have been intended for creditors whose own conduct was in good faith. In our opinion, under the facts stated, appellee was not in the same class as the creditors for whom the trustee complains, and, accordingly, the order of the court below must be

Affirmed.