LIVINGSTONE v. HEINEMAN.

(Circuit Court of Appeals, Sixth Circuit.    March 4, 1903.)

No. 1,118.

1. BANKRUPTCY—CLASSIFICATION OF CREDITORS—CLAIM OF SURETY FOR REIMBURSEMENT.

There are two general classes of creditors of a bankrupt, within the meaning of Bankr. Act 1898, § 60a (Act July 1, 1898, c. 541; 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446]), first those who have priority and are to be paid in full, and second unsecured creditors who are entitled to equal dividends after the claims entitled to preference have been paid. The

claim of a surety for reimbursement for money paid in discharge of his obligations as surety belongs in the second class.

**2. SAME—SURETIES—RIGHTS BY SUBROGATION.**

A surety for a bankrupt who has discharged the debt, either before or after the bankruptcy by Bankr. Act 1898, § 57i (Act July 1, 1898, c. 541; 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]), is subrogated "to the rights of the creditor," and is affected by any preference received by the creditor before payment, which inheres in the claim.

**3. SAME—SURRENDER OF PREFERENCES.**

A bank held two series of notes against the same principal maker—one signed by a single surety, and the other by the same and other sureties. The principal was adjudged a bankrupt, but had previously, while insolvent, and within four months, made payments to the bank on both series of notes. The notes of the first series were taken up by the surety, some before and some after the bankruptcy. *Held*, that he could not prove a claim therefor in bankruptcy without surrendering the preferences received by the bank on both series of notes.

**4. SAME—APPEAL—DENIAL OF MOTION TO EXPUNGE CLAIM.**

A trustee may appeal from an order denying his motion to expunge a claim allowed, unless further preferences were surrendered, and directing a return of a preference previously surrendered by the creditor.

Appeal from the District Court of the United States for the Northern District of Ohio.

Joseph New was adjudged a voluntary bankrupt on his petition filed August 8, 1901. Within four months of the filing of the petition he was indebted to the Mahoning National Bank of Youngstown, Ohio, on two series of promissory notes, in the aggregate sum of $9,000. The following is a list of the notes of the first series: (1) Note for $1,200, dated January 14, 1901, payable in four months; (2) note for $1,000, dated February 1, 1901, payable on demand; (3) note for $1,500, dated February 27, 1901, payable in four months; (4) note for $1,200; (5) note for $2,500, dated July 19, 1901, payable in four months; (6) note for $800, dated July 5, 1901, payable in four months. In July the note for $1,200 (being the fourth note above mentioned) was taken up by the bankrupt by the payment of $600 and the making of a new note for $600. The notes of the second series, six in number, for $133.33⅓ each, were all dated May 20, 1900, and payable in one, two, three, four, five, and six months, respectively. Heineman, the appellee, was surety on all the notes of the first series, including the $600 note substituted in part for the $1,200 note above mentioned, and Heineman and Isaac New and Joseph Newgass were joint sureties on the notes of the second series. In addition to the payment of the $600 on the $1,200 note, the bankrupt, within the four-months period, paid and took up two notes of the second series; the amount of the payment being $266.66⅔. It is conceded that the payments were not guilty, but innocent, preferences. The bank elected to look to the sureties for the payment of the balance due on these notes, and failed to prove any claim against the estate of the bankrupt; nor did the sureties on the notes of the second series prove any claim thereon against the estate of the bankrupt, in the name of the Mahoning National Bank or otherwise, because the preference payment thereon of $266.66 was so large that they could not afford to surrender it. Prior to the adjudication, Heineman paid the first two notes of the first series, the amount of the payment being $2,200, and after the adjudication paid the other four; the total of the two payments being $7,600, which, with the preferential payment of $600 made by the bankrupt, paid the notes of the first series in full. Heineman surrendered the preferential payment of $600, and proved claims, in his own name for the amount of each of said notes, separately, alleging in his affidavits that his claims on the first two were for money loaned the bankrupt; and on the other four, for money paid to the bank as surety thereon. His claim on the first note, for $1,200,

¶ 4. Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.

was allowed August 20, 1901, and a dividend of 10 per cent. was paid thereon October 5, 1901. The other claims were allowed January 23, 1902. On February 5, 1902, the trustee moved the referee to rehear and expunge all these claims, which the referee refused to do. Afterwards Heineman asked leave to withdraw the surrender of the $600, upon the ground that his claims should have been allowed without requiring the surrender thereof, which was refused by the referee. Afterwards, on the 12th day of February, 1902, the trustee, Livingstone, filed in the District Court a petition to review the action of the referee in allowing the claims of Heineman, upon the ground that the allowance was contrary to law. Afterwards Heineman filed in the District Court a petition to review the proceedings of the referee in requiring the surrender of the $600 as a condition of the allowance of his claims, and in refusing leave to withdraw the $600. These petitions for review came on for hearing before the judge, and it was contended by the trustee that the claims of Heineman should have been allowed only upon the surrender of the preferential payments upon both series of notes, to wit, the $600 payment on the first series, and the $266.66 payment on the second series; but the judge held that Heineman's claims were not affected by the preferential payments, because they were not proved or allowed in the name of the Mahoning National Bank for the purposes of subrogation, under section 57i (Act July 1, 1898, c. 541; 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]) of the bankrupt act, but were proved and allowed in the name of Heineman, for moneys paid by him for the use of the bankrupt, at his request and upon his promise to repay the same—the request and promise arising by implication out of the contract of suretyship—and ordered that the $600 be returned to Heineman, and that his claim for $7,600 be allowed.

J. B. Wilson, for appellants.

Arrel, McVey & Robinson, for appellee.

Before SEVERENS, Circuit Judge, and THOMPSON and WANTY, District Judges.

THOMPSON, District Judge, after stating the case as above, delivered the opinion of the court.

The co-sureties of Heineman on the second series of notes do not make any claim against the estate of the bankrupt, and they have no relation to the controversy here which we are called upon to consider. The controversy is between Heineman and the trustee of the bankrupt. Some time within four months preceding the filing of the petition in bankruptcy the bank was the owner and legal holder of the two series of notes, which, in so far as the bank was concerned, and for the purposes of the administration of the bankrupt's estate, constituted but a single claim for $9,000, no part of which could have been allowed, in favor of the bank, without the restoration to the bankrupt's estate of the two preferential payments. The disability of the bank in this respect inheres in the claim, and operates against the holder into whose hands it may come, whether by assignment or subrogation. Such holder succeeds "to the rights of the creditor," but "the rights of the creditor," under the bankrupt law, entitle him to participate in the distribution of the bankrupt's estate when, and only when, he surrenders and restores to the estate the preferential payments. The equal distribution of the bankrupt's estate among his creditors, contemplated by the bankrupt law, will not admit of one creditor receiving a greater percentage of his debt than any other creditor of the same class, and there are two general classes—first, those who have priority and are to be paid in full; and, second, gen-

eral or unsecured creditors, among whom the balance remaining after paying the creditors of the first class, is to be distributed equally, in proportion to the amount of their respective claims. The claim of a surety against the principal debtor for reimbursement of moneys paid in discharge of his obligation as surety belongs to the second class; and the surety, to obtain his distributive share of the bankrupt's estate, must proceed in the manner pointed out by the bankrupt law; that is, if the creditor fails to prove the claim, he must prove it in the name of the creditor, and he will then be permitted to participate in the distribution to the extent that he has discharged the obligation. A surety, when he assumes the relation, becomes contingently the creditor of the debtor, and the debtor of the creditor. If the debtor fails to pay the debt when it matures, the liability of the surety to the creditor becomes fixed, and he may be compelled to pay the debt; and when he pays it he succeeds to the rights of the creditor, and the liability of his principal to reimburse him becomes fixed. Here Heineman paid all the notes of the first series, but succeeded to the rights of the bank cum onere, and can only participate in the distribution of the bankrupt's estate when he restores to the estate the two preferential payments. He paid two of the notes before the filing of the petition in bankruptcy, thereby fixing the liability of the bankrupt to reimburse him, but this payment did not create a new and independent claim, free from the disability arising out of the preferential payments; nor will the fact that he was co-surety with others on the second series of notes require or permit that series to be treated by him as a separate claim, unaffected by the $600 payment. He was surety on all the notes of both series, and the effect of the two preferential payments was to reduce his liability to the bank to the extent of $866.66, by depleting the estate to the same extent. These payments reduced the claim of the bank to a balance of $8,133.33; and if it be assumed that this amount was paid by Heineman, and there be added to it the $600 surrendered by him to the referee, his total outlay will be $8,733.33, but if he be paid a dividend of 10 per cent. on $8,200, which will be the amount for which his claim on the first series of notes should be allowed, if the referee's view be sustained, his outlay will be reduced to $7,913.33, being $186.66 less than it would have been had he surrendered both payments and received a dividend on the full claim of $9,000. In other words, if the surety be permitted to treat each series of notes as a separate claim, and withhold the smaller claim, and refuse to surrender the proportionally large preference payment thereon, the original claim of the bank in the hands of the surety will receive a greater percentage in the distribution of the bankrupt's estate than other claims of the same class.

The questions presented in this case have been ably and exhaustively considered by the Circuit Courts of Appeals of the Seventh and Eighth Circuits, from opposing standpoints, and they have reached opposing conclusions. The views and conclusions of the court for the Seventh Circuit will be found in Doyle v. Milwaukee National Bank, 116 Fed. 295, and of the other court in Swarts v. Fourth National Bank, 117 Fed. 1, and Swarts v. Siegel, Id. 13. In view of

these cases, it would be a work of supererogation to discuss these questions further here. We agree with the conclusions reached by our Brethren of the Eighth Circuit.

The right of the court to entertain the appeal is questioned by the appellee, but we have no doubt of the right and the duty of the court to do so.

The order is reversed, with costs, and with directions to allow Heineman's claim for $9,000, provided he first restores to the estate the amount of both the preferential payments, and to disallow the claims proven by him if he refuses to restore the same.