**In re L & M REALTY CORPORATION,
Alleged Bankrupt.
No. 16727.**

United States District Court
E. D. Virginia, Norfolk Division.

May 5, 1955.

Samuel Goldblatt & Paul M. Lipkin,
Goldblatt & Lipkin, Norfolk, Va., for

Rena C. Leo, executrix of estate of Dr. Louis S. Leo, petitioner.

Norris E. Halpern, Norfolk, Va., for alleged bankrupt.

HOFFMAN, District Judge.

On a review of the Referee's findings and conclusions in the above matter, the facts are not in dispute. The alleged bankrupt corporation was a "close" corporation comprised of two stockholders who were its officers and directors, Dr. Louis S. Leo and Dr. Edward Myers. During the five year period prior to the filing of the involuntary petition herein, Leo and Myers advanced to the corporation the approximate sums of $17,000 and $18,000 respectively. It is admitted that these advances are genuine and not tainted with fraud as is so frequently the case in bankruptcy proceedings involving such corporations. Shortly prior to the filing of the involuntary petition the corporation was similarly indebted to two local banks, one in the sum of $5,-000, the other in the amount of $9,000. Both bank notes carried the endorsements of Leo and Myers. Leo died prior to the filing of the petition and his estate is insolvent. After Leo's death and prior to the bankruptcy proceedings, Myers caused or permitted the banks to be paid in full from corporate funds, all of which was done within four months prior to the filing of the petition in involuntary bankruptcy. There are *no other creditors* involved.

The act of bankruptcy alleged is the contended "preference" in paying the banks within the period in question while the corporation was insolvent. While there are other defenses asserted in the answer, it is unnecessary to discuss the merits of same as the Referee's order dismissing the petition must be sustained.

Had a voluntary petition been filed prior to the payments to the banks, the creditors would have been as follows:

Bank #1—$5,000.00 (Note endorsed by Leo and Myers)

Bank #2—$9,000.00 (Note endorsed by Leo and Myers)

Estate of Louis S. Leo—$17,000.00 (more or less)

Dr. Edward Myers—$18,000.00 (more or less)

■ Since Leo's estate is insolvent, the rather obvious purpose of the bankruptcy is to permit the estate to share on a pro rata basis, thereby leaving Myers the obligation to pay any existing deficit on any amount remaining due and owing the banks. It is a matter of common knowledge that banks do not care to seek payment from the estate of a deceased person when there is a living coendorser who is perfectly solvent. All of the equities of the case are, therefore, with Myers, and he cannot be criticized for using corporate funds in paying obligations on which he and Leo were, in effect, jointly interested.

While the Referee did not have the benefit of the authorities submitted to this Court on review, and based his conclusion on the equitable principles as set forth in Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, he arrived at the correct conclusion.

The petitioner is relying upon Title 11 U.S.C.A. § 96, sub. a(1), which states:

"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater precentage of his debt than some other creditor of the *same class*".

The essence of petitioner's argument is that the two banks herein are in the same class as the two creditors, Drs. Leo and Myers, and that the payment of the $14,000 to the two banks constituted a preference since it is alleged that the banks will receive a greater percentage than the two other creditors.

In answering this argument it is first necessary to determine whether or not a creditor who enjoys the assurance of a guarantor or surety of the debt is in a different class from a creditor who has no guarantor of the liability. There is authority that the two creditors are in different classes. In re Harpke, 7 Cir., 116 F. 295.

The Harpke case is discussed and repudiated after careful reasoning by the Eighth Circuit in Swarts v. Fourth Nat. Bank of St. Louis, 117 F. 1, 5, 7. The court there reasons:

> "The test of classification is the percentage paid upon the claims out of the estate of the bankrupt".

This court adopts the position of the Eighth Circuit in the absence of any case in point in the Fourth Circuit. If, in the case at bar, there had been no payment to the banks (and the endorsers and creditors were not the same persons), each bank and each creditor would have shared proportionately in the proceeds of the bankrupt's estate. Under such circumstances these four creditors would belong to the same class.

█ At this point, if the court were to apply the exact wording of Title 11 U.S.C.A. § 96, sub. a(1), the petitioner's position would be correct. However, it is necessary to consider the effect of the statement in parentheses above wherein it is said "and the endorsers and creditors were not the same persons". If someone other than Leo and Myers were the endorsers on the banks' loans, Title 11 U.S.C.A. § 96, sub. a(1) would be applicable and the payment to the banks by Myers would be a preference which the Bankruptcy Court could set aside. When, however, the sole stockholders in the corporation endorsed the notes to the banks, these stockholders contracted to see that the banks would be paid. Certainly these same stockholders cannot be permitted to come into this court and claim the right to be paid before the banks have recovered the entire amount owed to them. It is the duty of this court to see that equity prevails.

As said by Mr. Justice Douglas in Pepper v. Litton, 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281:

> "As we have said, the bankruptcy court in passing on allowance of claims sits as a court of equity. Hence these rules governing the fiduciary responsibilities of directors and stockholders come into play on allowance of their claims in bankruptcy. In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate. And its duty so to do is especially clear when the claim seeking allowance accrues to the benefit of an officer, director, or stockholder".

█ The equitable principle to be applied in this case may well be termed an estoppel. In contracting to guarantee payment to the banks of the amounts owed by the bankrupt corporation, the two stockholders are estopped from asserting any claim which would be in derogation of the rights of the banks in the assets of the alleged bankrupt.

This position is well stated in the opinion of Judge Sanborn in Swarts v. Fourth Nat. Bank of St. Louis, supra, 117 F. at page 12:

> "The contract of Siegel & Bro. was that they would pay these notes if the bankrupt did not. By that contract they are estopped from collecting or receiving anything upon or on account of them from the bankrupt estate, which still owes the full amount of them, until the bank has received the $14,600 which is still due to it on the notes".

In the opinion of the court the cases of Livingstone v. Heineman, 6 Cir., 120 F. 786, and In re Star Spring Bed Company, D.C., 257 F. 176, cited by petitioner are not applicable. The Livingstone case dealt solely with the question of

whether or not the creditors were all of the same class. The case at bar has the added feature of part of the creditors also being guarantors of the debts due the other creditors. The Star Spring Bed case involved a preference arising out of the transfer of certain accounts in return for a note, where the value of the accounts exceeded the value of the note. In that case, also, all the creditors were of the same class and the guaranty of some of the creditors by the remaining creditors was not an element as it is in the case at bar.

To further strengthen the position taken by the Referee in this matter, there is no evidence before the court in regard to the total paid-in capital of the bankrupt corporation. Frequently, in the case of a closely-held corporation, the stockholders, in lieu of subscribing to stock, attempt to put money into the operation of the corporation through the creation of a loan. In many cases this is permissible. In a bankruptcy case it is the duty of the court to look into all aspects of the "loan" in order to insure equitable distribution of the bankrupt's remaining assets.

As said by the Supreme Court in Pepper v. Litton, supra, 308 U.S. at page 309, 60 S.Ct. at page 246:

> "And so-called loans or advances by the dominant or controlling stockholder will be subordinated to claims of other creditors and thus treated in effect as capital contributions by the stockholder not only in the foregoing types of situations but also where the paid-in capital is purely nominal, the capital necessary for the scope and magnitude of the operations of the company being furnished by the stockholder as a loan".

This court believes that the "loans" of Leo and Myers may actually have been capital contributions rather than loans, in which case there would be no question as to the correctness of the Referee's decision. In view of the foregoing opinion, however, it is not necessary to decide whether or not Leo and Myers actually made loans or capital contributions to the bankrupt corporation.

An order will be prepared by counsel for the alleged bankrupt sustaining the Referee's dismissal of the petition herein in conformity with this opinion.