Rena C. LEO, Executrix of the Estate of Dr. Louis S. Leo, Deceased, petitioning creditor, Appellant,

v.

L & M REALTY CORPORATION, a Virginia corporation, Alleged Bankrupt, Appellee.

No. 7070.

United States Court of Appeals Fourth Circuit.

Argued Oct. 20, 1955.

Decided Dec. 6, 1955.

Norris E. Halpern, Norfolk, Va., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from an order dismissing a petition of the Executrix of Dr. Louis S. Leo asking that the L & M Realty Corporation be adjudged an involuntary bankrupt because of alleged preferential payments made to two banks while the corporation was insolvent.

All of the stock of the corporation was owned by Dr. Leo and a Dr. Myers. The corporation was indebted to Leo in the sum of $17,501.85 and to Myers in approximately the same amount. It owed no other debts except $14,000 to two banks, evidenced by notes indorsed by both Leo and Myers. After the death of Leo, while the corporation was insolvent and within four months of the filing of the petition in bankruptcy, Myers caused it to pay to the banks the full amount of the notes which he and Leo had indorsed and this exhausted the corporation's assets, leaving nothing to be paid upon the indebtedness due to him and to Leo. The trial judge stated in his opinion, D.C., 131 F.Supp. 57, that the estate of Leo was insolvent, although it is said here that there was nothing to support this finding except a statement in open court by counsel for the estate.

■■ There can be no question but that the indebtedness due the bank, being unsecured and not being entitled to any priority of payment over other creditors, was in the same class as the indebtedness due to Myers and Leo even though the note evidencing the indebtedness had been indorsed. Swarts v. Fourth National Bank, 8 Cir., 117 F. 1; Livingstone v. Heineman, 6 Cir., 120 F. 786. This being true, the payment to the bank constituted a preferential payment to a creditor which was an act of bankruptcy. It resulted in the payment in full of one of the creditors of the insolvent corporation to the exclusion of other creditors of the same class. The Bankruptcy Act

Paul M. Lipkin, Norfolk, Va. (Goldblatt & Lipkin, Norfolk, Va., on the brief), for appellant.

as amended 11 U.S.C.A. § 96, sub. a provides:

"(a) (1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

■■ Since the creditors were all of the same class, it is clear that the payment in full of the claim of the banks amounted to a preference, unless it can be said that the independent claim of an indorser on the note of the bankrupt to the banks is subordinated to the payment of that note in the distribution of the bankrupt's assets. The question, then, is: In the distribution of the assets of a bankrupt, is the independent claim of an indorser subordinated to the claim arising out of the debt of the bankrupt which he has indorsed? The answer to that question must depend upon whether there is anything in the contract of indorsement creating a lien or priority upon the assets of the bankrupt or making it inequitable for the indorser to share equally with other creditors with respect to his independent claim. There is manifestly nothing in the contract of indorsement creating any sort of lien or priority upon the assets of the bankrupt. It seems equally clear that there is nothing in that contract making it inequitable for the indorser to share equally with other creditors in the division of the bankrupt's estate with respect to a claim which does not arise out of the indorsement or have any relation thereto. The contract of indorsement is an agreement to pay that particular debt if the principal debtor fails to pay. It does not create any relationship with respect to any other indebtedness. So far as any

independent claim of the indorser is concerned, he is in no different position, because of the indorsement, from any other creditor of the bankrupt.

■■ The learned judge below was of opinion that, because Leo and Myers had indorsed the notes of the banks, they were precluded from claiming anything on their claims until the banks were paid in full. This rule applies where the claim asserted arises out of payment of indorsed notes or performance of a guaranty or indemnity agreement. It is based upon the equitable doctrine that one who has guaranteed the payment of an obligation and who is subrogated to rights under it upon payment, may not assert it as a claim to the detriment of those it was intended to protect. See American Surety Co. of New York v. Sampsell, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663; American Surety Co. v. Westinghouse Electric Mfg. Co., 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105; Jenkins v. National Surety Co., 277 U.S. 258, 48 S.Ct. 445, 72 L.Ed. 874; Swarts v. Siegel, 8 Cir., 117 F. 13; Collier on Bankruptcy, 14 ed., vol. 3 p. 1847. The claim of Leo here, however, is not a claim to which this doctrine has any application. It does not arise out of any indorsement or guaranty, but is an entirely independent claim; and there is no reason, so far as the record shows, why it should be postponed in payment to any other indebtedness owing by the corporation. The fact that a creditor of a corporation indorses its paper does not mean that he agrees that the paper which he indorses be given any lien upon the assets of the corporation or any priority over any claim which he may have against it. It means merely that he will pay the indorsed note if the corporation does not do so. There is nothing in this which justifies subordinating any independent claim which he may have against the corporation to the claim which he has indorsed. No case has been cited upholding any such proposition and we know of none.

There is nothing in Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 381,

which justifies the subordination or postponement of the independent claims of Leo and Myers to the claim of the bank merely because they were indorsers on paper which the bank held. There is nothing to show that there was any fraud in connection with these claims, that they represented mere capital contributions or that they were anything other than bona fide debts owing by the corporation. For the principles justifying the subordination of claims, see Pepper v. Litton, supra; Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293; Collier on Bankruptcy, 14 ed., vol. 3 p. 1810 and cases there cited.

In the peculiar circumstances of this case, the preferential payment to the banks would not result in prejudice to other creditors but for the insolvency of the Leo estate. Since Leo and Myers were the only other creditors and had independent claims in equal amounts, the payment to the banks would have inured equally to the benefit of both and each would have been relieved of making a payment equal to what he would have received from the distribution of the bankrupt's assets. Because of the insolvency of Leo, however, this result does not follow. The amount which his estate would have to pay on the claim arising out of the indorsement would not be the same as the amount he would receive from the assets of the bankrupt but decidedly less; and there is no principle upon which one claim could be offset against the other, since the bankrupt is the debtor with respect to both. If the $14,000 assets of the corporation had been ratably distributed among its creditors, the banks would have received approximately $4,000 and Leo and Myers would have received on their claims approximately $5,000 each. Leo's liability on his indorsement to the banks would have been approximately $5,000; but this liability would have been a mere claim against his estate. The $5,000 received from the assets of the corporation would be an asset of the estate for the

benefit of all its creditors. The effect of the preferential transfer which Myers caused the corporation to make is to take this asset from the creditors of Leo's estate and use it to extinguish in full a liability of the corporation for which Myers and Leo were secondarily liable, and thus benefit Myers at the expense of Leo's creditors. This is just the sort of thing that the Bankruptcy Act was intended to prevent.

For the reasons stated, the order dismissing the petition will be reversed and the case will be remanded for further proceedings not inconsistent herewith.

Reversed.

SOPER, Circuit Judge (dissenting).

This is an appeal from an order of the District Court dismissing a petition in bankruptcy filed on August 16, 1954 against L & M Realty Corporation, a Virginia corporation, based on the ground that on August 12, 1954 the corporation had committed an act of bankruptcy in that while insolvent, it paid in full a note of $9,000 owing by it to the National Bank of Commerce and a note of $5,000 owing by it to the Seaboard Citizens Bank, thereby making a preferential transfer, as defined in 11 U.S.C.A. § 96 sub. a(1), the effect of which was to enable the banks to obtain a greater percentage of their debts than other creditors of the same class.

The facts are simple and undisputed. The only stockholders of the corporation were Dr. Louis S. Leo and Dr. Edward Myers. The only creditors of the corporation were the two banks in the sums mentioned, and the two stockholders, each of whom had loaned the corporation approximately $17,000. Each of them had also endorsed the notes held by the banks. The only asset of the bankrupt corporation was the sum of $14,000 in cash, and this was used, as we have seen, to pay the notes held by the banks. At the time that the petition in bankruptcy was filed Leo was dead and his estate was insolvent. The payments to the banks were made at the instance of Myers, so that he would

not be obliged as an endorser to pay more than his fair share of the notes held by the bank. The petition in bankruptcy was filed by the executrix of Leo in the hope that the monies paid to the bank might be recovered as preferential payments so that the creditors of the insolvent estate of Leo might participate in the distribution of the assets of the bankrupt corporation. In such case Myers would be obliged to make good the shortage to the banks.

From these circumstances it is manifest that the payments to the banks were not preferential in the statutory sense since they did not deprive any creditor of a share of the bankrupt's estate which he was entitled to receive. It is true that in the rule set forth in Swarts v. Fourth National Bank, 8 Cir., 117 F. 1, and subsequent decisions, Leo and Myers belonged to the same class of creditors as the banks although the notes held by the banks were endorsed by them; but Leo and Myers were not entitled to share the assets of the bankrupt equally with the banks because they had surrendered their right to participate by their contracts of endorsement until the banks had been paid. The banks of course had no lien on the assets and would have had no priority over other creditors had there been any; but they were entitled to be paid before the creditors who had endorsed the obligations which they held.

The equitable principle has been frequently laid own and applied that a surety may not share a bankrupt's estate on equal terms with creditors whom the surety has undertaken to secure. In American Surety Co. v. Westinghouse Electric Mfg. Co., 296 U.S. 133, 59 S.Ct. 9, 80 L.Ed. 105, it was held that a surety company, which had executed a statutory construction bond to satisfy the claims of labor and material men against the building contractor, and had paid the full amount of its bond, had no right to compete with creditors of the contractor who had not been paid for labor or material; and the same rule was applied in American Surety Co. of New York v. Sampsell, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663 as to the claims of material men who had not filed their claims in due time and had thereby lost their right to recover under the bond. The Supreme Court went further in Jenkins v. National Surety Co., 277 U.S. 258, 48 S.Ct. 445, 72 L.Ed. 874, where it held that the surety company could not compete with the creditor it had agreed to protect, although the surety's claim was not based on the right of subrogation but upon a separate agreement of indemnity between the surety company and the principal in the bond.[1]

It is contended that this principle should not be applied in the instant case because the claims of Leo and Myers are independent of the claims of the banks, whereas, in the cited cases, the rule was applied to claims of the surety which were connected with or grew out of the obligations which it had assumed. There is, however, no intimation in the decided cases that the equitable principle should be strictly limited to the circumstances therein disclosed; and there is no good reason why it should be so limited. Moreover, it is not necessary for our present purposes to hold that the principle should be extended to all cases in which one creditor has endorsed or guaranteed the indebtedness due another. It is sufficient to point out that under the unusual circumstances of the pending case, it would be inequitable to permit the endorsers to press their claims in competition with the claims of the banks.

The injustice of such a proceeding is easily shown. Except for the limited li-

[1]. See also Fouts v. Maryland Cas. Co., 4 Cir., 30 F.2d 357; See also Central States Corp. v. Luther, 10 Cir., 215 F. 2d 38, 46; In re Prudence-Bonds Corp., 2 Cir., 102 F.2d 531, 534; Amick v. Columbia Casualty Co., 8 Cir., 101 F.2d 984, 986.

ability of the stockholders for the debts of the L & M Realty Company, the business in effect belonged to and was conducted by Leo and Myers as if they were partners each of whom had a one-half interest in the enterprise. When the business was in need of money they advanced additional sums in the form of loans to carry it on and when more money was needed they persuaded the banks to make loans to the corporation upon their endorsements. It would obviously be most inequitable to permit the owners of the business to apply its assets to the payment of their own claims until they had made good on their guarantees to the banks. If, in the cited cases, it was inequitable for a surety company, which had completely complied with its contract of indemnity by paying to the creditors the full amount of its bond, to compete with the creditors of the bankrupt contractor, how can the endorsers in the instant case, who have paid no part of the obligations which they guaranteed, be allowed to participate?

It is conceded in the opposing argument that if Leo's estate were solvent, the payments to the banks would not have prejudiced the other two creditors because each of them would have been relieved of his obligation as endorser. This is true, but it is also conclusive of the whole controversy. It is manifest that Leo, insolvent, had no greater claim against the corporation than Leo, solvent, would have had. Undoubtedly, the effect of the payments to the banks was to deprive Leo's creditors of a share of the assets of the bankrupt corporation, but Leo's creditors had no greater right to object than Leo himself. The argument confuses the creditors of Leo with the creditors of the bankrupt corporation. The section of the bankruptcy act which defines the preferential transfer of the property of an insolvent is designed to protect *his* creditors; but is not concerned with the creditors of his creditors.