**L & M REALTY CORPORATION, Alleged Bankrupt, Appellant,**

v.

**Rena C. LEO, Executrix of the Estate of Dr. Louis S. Leo, Deceased, petitioning creditor, Appellee.**

No. 7466.

United States Court of Appeals Fourth Circuit.

Argued Oct. 17, 1957.

Decided Nov. 7, 1957.

Norris E. Halpern, Norfolk, Va., for appellant, Paul M. Lipkin, Norfolk, Va. (Goldblatt & Lipkin, Norfolk, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOBELOFF and HAYNSWORTH, Circuit Judges.

PARKER, Chief Judge.

This is the second appeal in the bankruptcy case which was before us in Leo v. L & M Realty Corporation, 4 Cir., 228 F.2d 89, 90, certiorari denied 350 U.S. 969, 76 S.Ct. 438, 100 L.Ed. 841. On the former appeal we reversed the order, 131 F.Supp. 57, dismissing a petition that the L & M Realty Corporation be adjudged an involuntary bankrupt because of alleged preferential payments made to two banks while the corporation was insolvent. The reversal was based on the holding that the independent claims of the two stockholders of the corporation as creditors were not to be subordinated to claims based on notes

held by the banks merely because the stockholders were indorsers on the notes. On the remand the adjudication was opposed on the ground that the claims of both stockholder creditors should be subordinated to the claims of other creditors because the corporation was not adequately capitalized and the loans which were the basis of their claims were in reality contributions to capital and on the additional ground that Leo had been guilty of fraud in obtaining from one of the banks the loan represented by its claim and that the circumstances were such that bankruptcy would be of no benefit to any creditor. From an order overruling these defenses and adjudicating the corporation a bankrupt, it has appealed.

The only facts before us on the former appeal were thus stated in our prior opinion, viz.:

> "All of the stock of the corporation was owned by Dr. Leo and a Dr. Myers. The corporation was indebted to Leo in the sum of $17,501.85 and to Myers in approximately the same amount. It owed no other debts except $14,000 to two banks, evidenced by notes indorsed by both Leo and Myers. After the death of Leo, while the corporation was insolvent and within four months of the filing of the petition in bankruptcy, Myers caused it to pay to the banks the full amount of the notes which he and Leo had indorsed and this exhausted the corporation's assets, leaving nothing to be paid upon the indebtedness due to him and to Leo. The trial judge stated in his opinion, D.C., 131 F.Supp. 57, that the estate of Leo was insolvent, although it is said here that there was nothing to support this finding except a statement in open court by counsel for the estate."

We adhere to our holding that the independent claims of the stockholder creditors are not to be subordinated to claims of the banks merely because the stockholder creditors are indorsers on the notes held by the banks. We think, however, that an entirely different aspect has been placed on the case by the evidence taken on remand. It appears therefrom that the corporation was organized by Leo and Myers in 1949 with a capital stock of only $19,000 to deal in real estate, and that shortly after its organization they advanced money to it in approximately equal amounts to enable it to carry on its business. While the amounts thus advanced were treated by the stockholders as loans to the corporation and it was not contemplated that stock was to be issued in payment of them, it is clear that they were not loans in the ordinary sense and were not intended to be paid in ordinary course, as were the claims of other creditors. The corporation was not adequately capitalized, the advancements were made shortly after it was organized and no steps were ever taken looking to their repayment. They were made in approximately equal amounts by the two stockholders owning the corporation, who actually paid other creditors in priority to themselves year after year, no interest was ever paid on them and the evidence is that the money was advanced as loans rather than as subscription to stock in the thought that this would be helpful for income tax purposes. In such situation, while the loans are not to be treated as investments in stock, it is clear that they were capital contributions to a corporation inadequately capitalized and that, having been made by the two stockholders, who completely owned and controlled the corporation, they should be subordinated to the claims of other creditors. Pepper v. Litton, 308 U.S. 295, 306–310, 60 S.Ct. 238, 246, 84 L.Ed. 281; Stone v. Eacho, 4 Cir., 127 F.2d 284, 288; International Telephone & Telegraph Co. v. Holton, 4 Cir., 247 F.2d 178; Arnold v. Phillips, 5 Cir., 117 F.2d 497; Goldie v. Cox, 8 Cir., 130 F.2d 695; Boyum v. Johnson, 8 Cir., 127 F.2d 491; Albert Richards Co.

v. The Mayfair, 287 Mass. 280, 191 N. E. 430. As said by the Supreme Court in the case first cited, after reference to a number of situations in which claims by officers and stockholders of a corporation would be subordinated to the claims of other creditors:

"And so-called loans or advances by the dominant or controlling stockholder will be subordinated to claims of other creditors and thus treated in effect as capital contributions by the stockholder not only in the foregoing types of situations but also where the paid-in capital is purely nominal, the capital necessary for the scope and magnitude of the operations of the company being furnished by the stockholder as a loan."

Very much in point here is the case of Boyum v. Johnson, supra, 8 Cir., 127 F.2d 491, 494, where it was held that the note claims of the dominating stockholder of an under-capitalized corporation should be subordinated to the claims of creditors. The Court, speaking through Judge Johnsen, said:

"We should say at the outset that anything that may be owing to Boyum on his note claims will be ordered subordinated to the payment of the claims of the other general creditors. The record shows that the bankrupt was essentially a one-man corporation. Boyum was the controlling stockholder and virtually ran the affairs of the corporation as his own. His general dealings with the corporation were not on the arm's length plane of the other creditors. The cash advances which he made were apparently necessary to supply a deficiency in working capital. From their amounts, duration, and continued need, they were hardly mere ordinary commercial incidents, but rather part of a plan of permanent, personal financing, to avoid the necessity of increasing the capital of the corporation. Boyum's note claims, therefore, cannot be said to occupy an equal equitable position with the other general claims and should accordingly be subordinated to them. See Pepper v. Litton, 308 U.S. 295, 307–311, 60 S.Ct. 238, 84 L.Ed. 281."

█ The evidence shows that there were no creditors of the corporation at the time of the so-called preferential payments except the banks and Myers and Leo; and, as the banks were entitled to have the claims of both Myers and Leo subordinated to their claims, it cannot be said that the payment to the banks resulted in their obtaining a greater percentage of their debts than other creditors of the same class. The rule applicable was laid down by Judge Walter H. Sanborn in Swarts v. Fourth National Bank, 8 Cir., 117 F. 1, 7, as follows:

"Those creditors who are entitled to receive out of the estate of the bankrupt the same percentage of their claims are in the same class, * * *. It is the relation of their claims to the estate of the bankrupt, the percentages their claims are entitled to draw out of the estate of the bankrupt, and these alone, that dictate the relations of the creditors to the estate, and fix their classification and their preferences."

And Judge Grubb thus states the rule in Walker v. Wilkinson, 5 Cir., 296 F. 850, 852:

"The purpose of the law of preferences is to secure an equal distribution of the bankrupt's assets among his creditors of like class. If a transaction, in its entirety, does not interfere with this purpose of the law, it does not constitute a voidable preference. The fact that one creditor is paid in full from a source, to which other creditors have no right to resort, does not entitle other creditors to complain or the trustee to recover the amount so received. The transfer or payment must be one that diminishes the fund to which creditors of the

same class can legally resort for the payment of their debts, and to an extent that makes it impossible for such other creditors to obtain as great a percentage as the favored one, in order that the transaction constitute a preference."

Even if Leo and Myers be considered creditors of the same class as the banks within the meaning of the statute, notwithstanding that their claims are subordinated to the claims of the banks, it is clear that the petition for adjudication of bankruptcy should be dismissed. An adjudication could accomplish nothing in the peculiar circumstances here existing where the corporation has no assets except the claims against the banks for the alleged preferential payments and any moneys recovered from the banks on these would have to be paid back to the banks in preference to Leo and Myers, the only other creditors.

■ And we think that the adjudication in bankruptcy should have been denied for an additional reason. The evidence shows that Leo obtained the loan upon which the claim of the National Bank of Commerce is based by a false financial statement relied upon by the bank in making the loan. Under such circumstances, any claim that he may have against the corporation should on equitable principles be subordinated in the distribution of its assets until the loan of the bank has been satisfied therefrom. See Pepper v. Litton, supra. So far as the claim of the Seaboard Citizens National Bank is concerned, it appears that the funds of the corporation from which the alleged preferential payments were made were on deposit in that bank at the time of the payments and the bank had the right to apply the deposit against its claim without this constituting a preference. Citizens National Bank of Gastonia v. Lineberger, 4 Cir., 45 F.2d 522; Studley v. Boylston Nat. Bank, 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313. Nothing could have been accomplished by an adjudication in bankruptcy, therefore, as the Seaboard Citizens Bank had received no preference, Leo was not in position to attack the payment to the National Bank of Commerce, and Myers, the only other creditor, was a party to the payment.

■ While questions involving the right to set aside preferences should not ordinarily be considered in connection with the question of adjudication, we think it proper that they be considered in a simple case such as this, where it is perfectly clear on the evidence that nothing could be accomplished by an adjudication except to involve the parties in costs.

The decision appealed from will be reversed and the case will be remanded with direction to dismiss the petition.

Reversed and remanded with directions.